CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 8

**dropped** 21:17
**DTC** 92:9,17 93:5,8,9
93:21 94:11,20,24
96:2,11 146:10 147:4
**due** 8:12,17 17:11,13
17:17 20:2,7,16
22:10,19 23:9,11
27:18 31:16 40:1,8
40:17,22 54:23,24,24
56:24 57:2 58:7
60:13 64:6 78:13
80:3,3 86:13,16
87:16 88:22 91:2,19
99:2 100:14,21
103:22 105:17 106:4
106:22 108:16 120:8
141:13 153:14 157:6
157:9 159:5,9,17,21
159:22,25 160:21
161:3 163:15 164:14
164:24 165:12,17,20
165:21 167:6,18
170:19 172:3 174:18
174:23 175:25 176:4
177:17,22,24 178:3,4
178:9,9,23 180:11
181:8 182:4 184:17
185:14 187:3,6,24
188:16,17 189:4,8
196:22 198:2,5,7,9
198:10,12,15,17,20
198:22 200:6,22
214:24 215:7,10
**dug** 36:2
**duly** 12:4
**duties** 30:6 123:23
186:8,8
**Dyer** 1:14 4:13 12:1

**E**

**E** 2:1,1 5:1,1 10:1,1
186:23
**earlier** 24:11 82:18
84:9 88:16 104:9
109:1 119:2 130:11

132:14,19 148:15
157:4 161:19 188:5
199:24
**early** 24:11 53:23,25
55:7
**East** 2:18
**easy** 16:6
**Echeverria** 7:10,16,23
9:10 21:23,25 26:12
33:23 44:15 70:7
81:18,21 82:16,20
147:24 149:24
150:18 153:20
156:15 189:25 190:5
209:12
**economics** 14:12
**EC2A** 1:21
**EC4V** 4:4,8
**EC4Y** 4:14
**education** 14:3
**educational** 13:9
**effect** 24:20 79:3,16
154:21 183:16
**effective** 166:5
**effectively** 26:3 36:21
42:25 65:19 73:17,25
93:6 94:20 96:5
143:25 149:25
155:19 166:4
**efficient** 109:13
**efficiently** 112:13
**either** 13:5 70:13
74:12 79:12 95:21
109:20 115:4 183:15
185:17 188:21
196:18 203:1
**elite** 18:15
**Ellman** 2:9 11:7
**email** 2:7,11,16,20,25
3:6,10,15 4:5,9,15
6:2,6,11 7:1,2,7,8,13
7:14,19,21 8:1,2,20
8:21 9:1,2,7,8 48:2
49:7 67:8 68:13

70:16 97:18 101:18
104:19,21,25 113:17
125:25 138:19
140:23 145:17,17,20
146:2,2,9 147:14,23
147:24 148:3,10,18
149:4,17,23 150:17
150:18,21 151:25
152:24 153:1,17
154:18 156:15 157:1
157:4,14,18,23
158:20 159:11
175:20 177:2,6
178:13 181:16 199:4
199:8,23 200:16
207:6,8 208:19,22
209:12
**emails** 80:14 96:22
107:15 110:5 114:3
118:17 150:9 163:12
202:23 210:5
**embarks** 13:12
**Emily** 2:22 11:15
**emily.betts@hardw...**
2:25
**emphasize** 99:4,8
**employed** 37:7 45:16
48:24 49:3 67:17
123:24 197:20
**employee** 25:2 219:14
219:15
**employer** 20:20
**employment** 24:23
25:3,9 30:21 53:25
82:14 112:16 124:2
204:22
**encompassed** 198:19
**encountered** 80:22
**encouraged** 173:21
**Enforceability** 131:12
**England** 14:19 19:1
**enhancing** 24:20 27:5
**ensure** 94:7 200:10
**entailed** 20:4

**entered** 13:4 47:5,8
60:20 133:5 143:4
**entering** 143:7,12
**entire** 125:17 163:23
164:23 179:19
**entirely** 41:24 68:7
**entities** 213:17
**entitled** 6:17 112:2
165:13
**entity** 49:21 88:14
95:20 99:25 154:21
154:24 155:11,11,23
**envisaged** 25:16
**equities** 93:11 95:25
96:1,11 133:6,8
134:12
**equity** 46:19,22 68:18
93:16
**erased** 195:2
**error** 63:12
**errors** 65:2
**escalate** 35:10
**escalated** 35:9
**Espinosa** 8:23
**essentially** 20:5 23:10
30:11 32:11 35:22
39:5 40:16 41:20
43:3 49:25 56:8 58:4
74:12 85:4 93:10
95:18 96:4 98:6,11
98:15 99:7 127:11
132:5 156:6 158:22
163:1 188:10 192:5
194:14 199:21
207:12,18
**establish** 100:11
128:21 165:14
175:17
**establishing** 26:3
47:19
**Esteban** 32:7 162:17
162:20 204:15,21
206:1
**Estevez** 32:7 204:15

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 9



204:21 205:17,19,24
206:15 207:4
**evening** 203:18
**event** 134:23
**eventually** 39:7 54:4
87:24 89:6,23 90:7
134:11 163:5
**everybody** 172:16
**everyone's** 21:10
**evidence** 109:15
114:20 115:3 130:18
162:10 163:12
166:16 168:25
204:24 207:14,14
**evidentiary** 45:25
**exact** 71:12,18 124:16
125:25 175:21
**exactly** 106:1 148:16
155:14 192:7 194:16
214:3
**examination** 5:4 12:13
100:6 210:17,19
212:5 215:17 219:8
**examine** 144:20
**examiner** 1:14 4:12
10:10,14,16 11:11,25
12:1,6,11 13:11,23
14:2 22:23 23:1
25:18 28:12,14,17
36:8,13 41:15 44:25
46:8,16 55:6 59:23
60:1 67:10,13,20,23
69:15 73:3 93:8,12
93:17 96:25 97:24
98:2,5,18,21 100:7
100:17,24 101:4
113:4,9,13,23 115:10
115:13,15 118:6
120:22,25 121:4,6,23
122:4,19,22 123:1,4
132:17 137:9 142:3,7
142:10,14 147:9
151:23 160:18,22
161:2,5 164:20,25

165:11 169:18,21,24
170:1,4 171:5 172:24
175:14,17 176:12,19
181:18 186:18
193:15 194:3,6,9,11
194:13 195:18 197:8
197:12,14 198:1
202:2,7 203:19
204:17,23 205:3,6,8
205:13 206:5,8,17,21
208:13,16 210:16,20
215:18 216:5,13
**example** 18:25 24:2
34:25 35:8 65:18
74:2 87:10 96:11
103:13 109:11 117:1
128:7 166:13 185:7
203:13
**examples** 37:2
**exams** 15:13,14
**exception** 116:12
**exchange** 75:6 138:20
153:1 157:2 202:23
**exciting** 25:7 108:20
**excuse** 19:22 114:10
210:10
**executing** 42:23,23
43:1
**execution** 87:25 88:3
135:5
**execution-only** 73:16
**executive** 18:19
**exercised** 32:22
**exercises** 128:21
**exhibit** 6:1,2,6,11,16
6:21 7:1,7,13,19 8:1
8:7,11,15,20 9:1,7
47:13,15 67:8 68:14
97:13,15 101:15,17
104:16 112:2,5 123:9
123:14 124:19 125:7
145:12,15 147:16,18
150:13,15 156:9,11
176:22,24 182:12,14

185:21,23 196:9,11
198:24 199:1 208:3,6
209:7,9 211:2,6
**exist** 182:5
**existed** 105:14 134:17
**existence** 196:17
**existing** 84:22 160:2
178:6,10 188:6
**exited** 138:13
**expand** 63:13
**expanded** 163:17
**expanding** 85:2
**expect** 25:3 44:9 62:18
67:15 72:14 88:11
136:4 196:21 199:9
**expectations** 24:23
**expected** 51:10 117:5
187:21
**expecting** 51:8
**experience** 35:13
40:23 107:7 111:4
164:7
**experienced** 31:20
**expertise** 106:5
**experts** 17:18
**explain** 22:16 23:6
39:14 56:17 78:15
90:17 110:17 143:1
198:8 199:22
**explained** 37:9 76:5
84:9 102:19 109:1
**explaining** 123:7
**explanatory** 120:18
123:5 212:6
**exploration** 101:5
**explore** 165:7
**exposure** 38:19 39:13
39:15 42:5 46:22
49:18 83:16,18
**exposures** 171:1
**expressed** 157:13
162:16 201:12
**expressing** 114:14
162:14 180:7

**extent** 27:1 38:17
39:16 71:11,17 88:9
88:19 92:20 106:3,14
106:16,18 120:3,17
121:2,16 127:23
128:16 129:1,13
137:23 139:2 165:3
189:2 205:11 207:16
**extremely** 31:1 36:19
55:10 108:20 141:9
**eyes** 65:6
**E14** 3:14

---

**F**

**face** 60:7,8 78:12
**faced** 65:17 79:9,12
**fact** 19:12 22:17 23:8
27:24 31:10 40:7
51:1 62:25 71:24
72:25 74:3 75:1
79:11 80:7 85:1 91:3
91:5 92:20 114:18
144:3 160:3 162:8
166:15 205:1,3
**factor** 79:3,16
**facts** 41:24 167:2
**fail** 39:1
**failed** 38:25
**failure** 134:23
**fair** 21:2 76:9 94:8
125:7 162:25 168:7
200:21
**Fairfield** 130:6
**fairly** 17:10,15 25:6
27:16 55:7 62:17
64:14 78:11 80:25
86:24 88:18 119:24
147:12 167:17,17
171:24 173:18
**fairness** 141:2
**fall** 37:10
**Falla** 70:7
**familiar** 33:15 38:22
45:21
**family** 74:4 143:17

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 10

144:4
far 55:18 122:13,15
  133:14 146:5 162:1,9
  171:12 193:9 195:16
fat 59:6,8,10
favor 66:19
fears 119:5,17
February 18:4,5,6
  19:22 54:5 56:15
  89:16 124:12,12
  168:8 189:2 190:16
  191:1
feedback 80:13
feeder 41:7,13
feeds 41:7
feel 19:10 36:23 81:9
  110:10 141:20 158:3
feeling 161:20
fees 72:24 74:6,9,21
  75:19,21 76:2 77:10
  204:2,13 206:11
fellow 14:18,20,23
felt 31:17 42:10 81:6,7
  82:5,6 85:8 92:25
  103:24 109:5 110:8
  110:12 117:18
  122:12 135:15
  137:25 139:16 158:9
  168:23 175:22 176:2
  176:7 179:24 213:20
  213:21 214:1,2
fight 42:15 44:4
file 200:12
filed 6:19,24 98:25
  112:3 123:11
filing 155:12,23
final 19:15 44:13
  112:22,24 113:1,3
  135:18
finalized 134:10
finally 90:6 124:25
  135:18 136:9
finance 85:18
financial 106:24 160:7

188:22
find 57:16 63:12 83:5
  113:4,5,6 114:3
  124:15 165:9 202:4
fine 46:1 47:22 67:23
  67:24 106:16 124:17
  125:12,14 200:25
  203:22
fined 114:20,22
finger 59:6,8,10
Finsbury 1:20
fired 174:19
firm 11:9
first 7:3,9,20 8:3,22
  9:3 14:8 17:12 18:8
  26:9 42:9 43:14
  48:13 49:2 53:4
  60:14 67:7 68:12
  71:5 79:11 83:7,9
  84:14 89:21,25 91:24
  115:5,12,13 131:15
  134:24 138:22
  139:12 142:20
  148:21 149:16 151:4
  151:6 159:10 163:18
  166:12 175:14,18
  186:22 187:17 206:1
five 103:20 109:2
  146:6 195:18
FL 2:15 3:5,9
flag 144:11,14,23,25
  167:21
flags 144:18 188:4
fledgling 17:11
floating 182:19
floor 2:18 61:16,19,25
  62:3,4,7,25 144:2
fly 25:24 26:1 188:13
fobbing 59:14
focus 84:21 165:3
focusing 68:12 91:23
  138:15
follow 60:19 61:4,7
  102:24 164:9 211:3

followed 164:10 201:6
following 21:15
follows 12:5
foot 149:18 150:4
foregoing 218:7 219:5
  219:7
forgoing 76:10
form 22:21 24:5 44:21
  46:5,10 55:4,24 58:2
  64:13 65:14 66:2
  68:6 70:18 71:19
  72:9 73:10 75:11
  76:3,12,20 77:11,19
  78:8 87:4 95:2,6
  102:17,23 110:21
  111:19,21 113:22
  115:2,4,25 118:14
  134:18 144:7 152:22
  154:9 161:19 187:8
  189:17 190:2,12
  197:3 201:25
formal 32:18 34:16,25
  35:7
formally 34:22
format 200:8
formed 50:15
former 163:19
forward 111:6 167:12
found 62:2 160:24,25
frankly 106:4
fraud 63:1 128:22
  142:16 211:22 212:1
free 25:6 86:7 126:17
Friehling 117:22
  118:2,4,8,12
friendly 190:6
friends 74:4
front 97:24 115:14
  145:15 197:9 206:12
  211:6
frustrations 63:20
fulfill 159:1
full 12:6,8 71:13
  159:17,21 161:2

178:4,8 189:8 219:8
function 21:19 27:3,10
  157:6 165:4
functions 165:7
fund 33:15 39:8 41:5,7
  41:7,9,19,21 42:1,21
  42:24 43:11,17 44:5
  45:6,7,9,11,16 55:16
  66:18 71:22 72:6,15
  72:24 74:2 77:10
  78:11 95:5 100:3,4
  132:11 144:19
  160:11 164:7 174:13
  174:13,18 177:18
  198:11 213:4,8,9,9
  213:10
fundamental 77:14
  87:24 88:18
fundamentally 63:6
funds 17:14 20:7 41:6
  55:11 64:5 74:3,12
  74:14 83:20 101:11
fund's 213:14
fund-of-fund 27:20
fund-of-funds 17:18
  78:3 83:15
further 72:3 132:22
  144:21 216:4 219:13

G
G 10:1 129:22
GAAP 116:23
GAM 20:9,14 24:19
  27:21 30:25 65:17
  103:20 164:8,17
  166:22 201:13
game 66:13,16
Gauvain 32:5
general 16:4 24:22
  46:15 80:13 100:21
  143:22,24 173:14
generally 19:12 30:5
  32:5 37:6 41:6,8
  45:10 48:11,23 78:14
  97:23 115:23 167:11

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 11



188:21
Geneva 25:16,21 26:1
  32:6 125:21 171:8
Geneva-based 20:22
gentleman 129:3
gentleman's 26:16
gently 81:2
genuinely 158:3
getting 121:3 143:23
  159:3 163:9 167:14
  169:19 195:7
Gibson 170:23 171:7
  171:13 203:14
give 13:19 27:13 43:1
  51:23 54:5 60:5
  64:21 65:10 66:18
  71:3 78:16,17 79:7,7
  86:6 91:9 110:5
  135:17 136:14 143:7
  204:25 215:20
given 25:5 31:19 49:17
  56:14,18 60:1,4
  62:22 65:24 73:19,22
  74:24 78:21 85:9
  91:21 117:10,12
  118:24 130:2,7,18
  137:16 138:7 153:11
  154:12 158:13,15,25
  159:5 172:8 204:24
  206:25 219:9
gives 65:4,14 125:25
giving 53:13,17 73:17
  75:24
Glades 2:14
Global 17:9 19:19,25
  22:13
glossed 61:22
gmembiela@hunto...
  3:10
go 14:14 19:14 20:18
  33:12 37:21 38:2,4
  44:24,25 45:4 46:7
  47:20 52:6,18 53:1,8
  54:9,23 60:17 61:10

64:9 74:14 80:10
81:2 92:23 94:20
96:24 99:13 104:16
106:13 112:10 114:4
121:7 122:13,15
129:21 139:19 141:4
143:3 145:3 146:11
163:22,24 171:3
174:9 176:10 178:15
179:21 184:5 195:20
207:19
goes 134:12 151:9
  159:23 160:20
going 30:4 38:3 42:9
  43:13 45:4 47:12,17
  50:1,7,13 51:12
  54:11 56:17,19 57:22
  59:15 60:8,25 61:18
  63:4 64:9 65:21
  73:18 75:2 77:23
  78:18,20,23 79:1
  91:16 97:1,10,12
  100:5 101:16 106:2,3
  107:9 108:15,23,24
  112:1 119:12 128:2
  133:23 135:19 136:9
  136:13,17 137:6,13
  137:18,20 139:4,6,9
  139:10 140:12 141:3
  142:3,10 145:5,10
  148:13,16 150:12
  161:12 166:18
  168:25 176:13,20
  178:19 185:20
  188:13 195:22 196:6
  196:8 201:2,24,25
  203:9,14 206:11
  207:21 208:1,5 211:3
  215:22 216:2,9
good 12:15 56:2,7,11
  145:14 163:2 210:24
  210:25
Gosh 24:9
governance 174:23

graduated 15:5
granted 66:19
grateful 74:23 78:21
Gray's 2:19
great 66:19
Greater 3:14
Greenwald 2:13,13
  11:8,8,9
grips 84:25
ground 2:18 12:18
grounds 64:10
group 26:19,25 27:2,9
  29:3,6 85:4,5 172:4
Grupo 126:8,11,23
  127:2 171:1
guess 19:9 31:4 74:23
  92:12 96:7 99:10
  182:1 192:1 198:18
guide 71:5
Gus 11:19
GUSTAVO 3:7
guy 51:22 58:7 59:9
  140:17 141:16,25
guys 81:7,12 82:5
  119:21 141:13 166:5

H

H 129:22
half 103:20 109:2
  172:18
halfway 115:6
hand 25:6 51:7 82:9
  82:11 130:24 158:23
Handbook 8:8
handle 108:23
handled 38:15
handles 42:20
hands 95:19 129:13
  143:17
hang 176:19 204:17
happen 36:3 39:21
  53:22 57:22 58:24
  59:2 60:25 78:14
  135:19 136:9 140:10
  181:8

happened 23:11 37:15
  41:10,20 57:11,13
  81:5 188:20
happening 30:1 46:20
  82:12 139:24 143:8
  178:12
happens 63:12
happy 42:13,16 53:13
  53:14 89:12 163:6
  179:23
hard 36:19 103:22
  124:15
Hardwicke 2:22,23
  11:15
hassle 79:1,3,16
hat 34:5
hats 34:4
HBA 70:2
head 12:22,23 20:1,15
  20:17 26:19,19 30:15
  32:5 69:24 71:15
  99:22 163:14
headed 6:21 8:8,11,15
  18:18
headhunter 135:20
headhunters 22:2
heading 200:18
headline 6:18,23
  123:12
hear 162:21 193:23
  194:16
heard 10:23 22:12
  31:3 52:13
hedge 17:14 20:7
  42:20 55:11,16 71:22
  72:6,15,24 74:2,12
  77:10 78:11 96:5
  100:3,4 144:19 164:7
  174:13,18
hedging 46:21,22
heel 108:6
Heidrick 22:1
held 41:8,14,18 84:3
  85:22,23 86:3 88:7,9

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 12

92:9,12,19 93:5,21
94:11,24 95:22,23
**Hello** 52:5 54:13
**hell-bent** 35:25
**help** 51:6 91:9
**helped** 16:23 59:9
**helpful** 13:21
**hereof** 218:11
**highlight** 104:5 209:17
  209:17,18
**highlighted** 160:8
  208:9,14 209:15,23
**highlighting** 127:11
  210:2
**highly** 72:25
**Hill** 4:19 10:6
**hindsight** 62:23,25
**hired** 20:10 21:21
  201:14
**history** 38:20,23 129:6
  182:1
**holding** 95:11 96:6,13
**holdings** 138:13,13
**Homewood** 2:17 11:12
  11:12 202:24
**Homewood's** 207:6
**honest** 101:9
**honors** 14:9
**hope** 34:1
**hoped** 140:25
**hoping** 25:5
**Horowitz** 117:23
  118:2
**host** 101:11 158:23
  178:14
**hours** 37:25 129:3
**house** 62:4,19
**Houston** 38:7
**Houston-based** 38:5
**how's** 139:9,9,9,9
**huge** 39:18 108:17,18
**Hugh** 6:7,12 9:4 32:2
  33:22 34:13 43:25
  44:6 49:15 50:8,23

52:4 54:12,12 55:2
56:20 57:15 58:19
59:17 67:5 69:4 70:3
77:6 81:15,22 82:17
84:8 97:19 99:7,11
101:19 104:20
105:15 106:12
116:13 125:20
130:25 133:14 141:4
149:14 151:20
152:19 162:17,21
180:14,19 193:11,19
208:19
**Hughes** 8:4 171:20
  177:4
**Hugh's** 54:19
**Hunton** 3:3,8 11:17

**I**

**idea** 26:2 54:5 85:24
  90:18 91:7 126:24
  134:19 200:11
**identification** 47:15
  97:15 101:15 112:5
  123:14 145:12
  147:18 150:15 156:9
  176:22 182:14
  185:23 196:11 199:1
  208:3 209:9
**identified** 116:2
  119:20 120:1 162:3
  188:3 191:23
**identify** 182:3,6,10
  218:7
**identifying** 167:19
  173:10
**implement** 20:6
**implications** 147:7
  205:11
**importance** 99:4
  104:5
**important** 40:21 51:24
  55:8,12 63:5,19
  65:22 86:3,8,12,17
  86:18,20,21 87:15

133:9 162:1 163:9
179:8 190:9 203:2
**impression** 24:15
**inability** 142:22
  144:22
**inaccurate** 173:5
**incensed** 110:2
**incentive** 28:21,22
**inclined** 12:22
**include** 62:25 81:18
  125:19
**included** 69:2
**includes** 48:5
**including** 177:3
  209:23
**incomplete** 154:19
**incorrect** 110:11
**independence** 144:8
**independent** 17:17
  85:21 86:2,11,22
  87:17 93:15 94:2,8
  121:24 135:25
  179:12 185:9 205:16
**independently** 185:13
**index** 47:11
**India** 14:11 15:2
**Indian** 17:2
**indicated** 218:10
**indicates** 135:2
**indiscriminately**
  195:14
**individuals** 70:1
  125:23 126:23
**inference** 78:1
**Infiltrator** 131:18,21
**inform** 203:8
**information** 13:7 86:1
  104:4 156:7 171:4
  189:11,12 195:8
**initial** 187:24 188:16
  188:16 189:9,22
**initially** 25:19
**Inn** 2:19,23
**input** 182:25 183:3

184:2 196:20,23
  197:15
**insight** 91:10
**insisted** 192:14 193:4
**insofar** 189:10
**insolvency** 14:19
  16:10,14,16
**instance** 74:6
**Institute** 14:18,21
**instructed** 105:18
**instruction** 53:14 61:4
  65:25
**instructions** 56:13,18
  58:20 60:1,4
**Integrity** 131:11
**intelligence** 142:24
**intention** 207:9
**intentional** 41:2
**interactions** 190:24,25
**interest** 27:6 42:4,11
  43:8 65:8 70:25
  138:12 144:9 201:12
  205:12
**interested** 43:20 92:2
  219:17
**interests** 36:24 42:12
  43:14
**interject** 28:13
**intermediate** 41:5
  160:14
**internal** 126:20
**internally** 169:16
**internationally** 18:22
**interview** 201:17
**interviewed** 50:24
**introduce** 11:3
**intrusive** 55:17
**invest** 43:16 44:17
  66:20 80:16
**invested** 49:12 67:16
  80:19
**investing** 43:20 44:11
  87:3 120:9,13 121:13
**investment** 6:22 8:8

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012



20:22 21:1 23:12
30:16 32:22,25 33:2
33:3,4,6,10,11,19
34:13,15 35:3,4,8,14
35:14,23,25 36:15,17
36:20,25 40:6 42:8
42:15 43:15,19,23
44:10 46:15,17 55:9
55:13 57:3 60:18
68:3 73:13 74:8,11
74:19 75:5,10 76:7
77:9 81:14,23 83:1,5
83:12 84:14,16 85:17
98:12,14 103:5
106:15 109:25
123:10 130:5 131:25
132:2,10 133:15,18
136:25 140:21 155:1
155:7,24 157:7,13
160:3 162:5 174:10
174:20,20,21 187:25
189:9,22 198:12,13
198:15 199:25
200:15 201:5
**investments** 20:7
23:13,23 32:10 35:16
36:4 37:7 41:18
84:22,22,24,24 85:23
88:8,9,10 123:8
132:6,8 160:2 173:17
178:8 188:6
**investor** 43:11 74:5
78:23,23 108:18
120:9,10 160:4
**investors** 42:12 51:21
63:9 74:14 120:5,12
121:12 123:2 126:19
152:1,7
**involved** 16:13,19
18:22 24:4 33:25
34:3,10 44:1 49:20
51:8 52:12 55:22
144:4 165:8,10,15,16
165:20,24,25 174:17

183:12,25 184:7
188:1
**involvement** 107:17
**Irish** 213:9,10
**irregularities** 114:19
**irregularity** 114:6,16
**Isleworth** 12:10
**isolation** 166:2
**issue** 16:22 25:14 52:7
65:9 77:7 111:9
127:19 128:8,20
134:4,13 143:16
155:20 166:3,6 185:8
188:23 193:11 214:8
**issued** 113:2,3,5,11
126:2
**issuer** 83:17
**issues** 16:18,19,24
19:2,2 26:25 38:8,11
38:15,16 57:4 74:13
85:24 89:24 90:14
91:2,17,22,23 92:3,3
96:19 99:6 103:8,14
105:14 106:4,15
107:1 116:16 119:2
139:5 141:12 160:10
162:3 164:19,21,22
166:9,14,17 167:12
167:14 172:2 180:24
182:3,10 184:16,21
185:3 187:11 190:21
191:23,25 192:2
200:2 201:21
**item** 64:16 171:25
**items** 214:1
**it'd** 140:10
**i.e** 131:18

**J**

**J** 3:7
**Jaime** 204:15,19
**Jaitly** 1:13 5:3 6:3 7:3
7:9,16,23 8:3,24 9:3
9:9 10:21 11:24 12:3
12:9,15 13:13 47:17

97:4,10,17 101:7
112:9 125:16 127:9
145:14 147:21
156:14 170:17
173:24 174:3 182:17
186:1 191:21 195:25
196:6,8,14 199:3
202:11 208:5 210:15
210:24 211:11 216:6
216:12
**Jaitly's** 125:8
**Javier** 2:5 11:5
**jbleichmar@labato...**
2:7
**JCL** 70:3
**Jeevanjee** 32:6 138:24
**jeopardy** 176:8
**job** 30:19 108:24
109:5 174:14 201:21
**join** 19:8 51:6 172:5
172:10
**joined** 17:9 24:9 49:22
108:14 171:19
**joining** 50:25
**Jonathan** 6:3,7,12 7:4
33:22 34:14 44:2
48:2 49:6,16 50:8
52:4 54:12 56:20
57:15 58:19 69:4
70:2,4 77:6 81:16,22
84:8 97:18 101:19
104:20 105:18
106:17,21 107:9,19
109:16 116:5,13
118:24 119:8,9,16
124:18,20 125:2,3,10
125:20 126:2 130:25
138:22 139:1,8 141:4
141:14,23 145:18
146:8 149:15 151:21
152:19 153:2,9 154:2
154:6 155:4 156:1
164:23 181:14,15
**Jonathan's** 99:11

109:22 124:14
**journey** 104:3 109:6
**Judith** 1:25 11:2 219:3
219:22
**July** 1:16 6:4 7:11,17
10:10,14,15 19:23
20:18 24:9 26:10
48:3 49:1 105:21,22
113:8,11 124:14
147:25 150:18
**June** 9:5 10:9,13
208:20
**junior** 170:23 171:8
200:24
**jury** 206:12
**JWO** 70:13

**K**

**keen** 49:16 50:9,11
**keep** 31:16 39:6,9
53:20 125:13 170:12
**keeping** 109:6
**key** 143:16
**Kirstin** 171:22
**knew** 30:17 66:25
84:25 85:10,11,15,19
92:13 151:16 180:20
201:23 203:2
**know** 19:10 21:1 25:4
25:11 27:21 31:9
32:14 33:24 34:25
35:19 38:18,20 43:3
46:9,11 50:1,4,21
51:3,4,7 52:5 54:6,8
57:6 58:5 59:11,12
59:17 60:23 61:9,18
62:5,8,11,13,24 63:3
63:9,10,11,13,14,16
63:23 64:11,25 65:5
65:5,17,20,24 66:13
66:21 67:14,17 69:16
69:17 70:11 74:1,9
74:11,13,14,25 76:14
79:5,6,9,12,23 80:5,6
80:14,17,25 85:20,20

OPTIMAL_BERLAMONT-000069

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 14

85:24 86:6,7,24 87:7
88:2,21,24 89:1,13
90:1,13,25 91:19
92:11,18,22 95:13,22
95:23 96:7,18 101:13
103:17 105:25 106:3
107:23 108:2,4,19
109:14 111:3,3,5,6
111:12,17,22 113:17
114:18,22 115:1
116:22 117:1,16,17
119:5,23,25 120:7,9
120:10 125:22
126:25 128:4,13,13
128:14,25 129:4,14
133:18,21,21,23
139:8,17,21 140:1,6
140:9,16,17,17,19,21
141:1,5,8,15 147:14
155:16 159:6 165:13
167:15,18,22 168:24
168:24 169:21 170:8
172:1,5 173:16,20,22
175:11 181:5 182:2
182:21 187:19 190:1
191:15 192:7,14,21
193:9 194:25 195:3,6
198:13 203:11
206:12,13,23
**knowledge** 27:16
67:14 105:23
**knows** 62:23

**L**

**L** 2:13
**Labaton** 2:5,9 11:6
**labeled** 68:17 72:20
138:7
**lack** 132:15 144:6,8
158:22
**lady** 164:2
**language** 116:15
166:14
**large** 17:15 27:1 83:21
83:22 88:19 106:16

106:18 129:1,13
159:9
**larger** 83:18
**largest** 17:17 51:22
**Late** 16:1
**launch** 41:21 199:18
199:19 200:3,4
**launching** 178:13
**law** 11:9
**laws** 218:5
**lawyer** 143:21 206:15
206:17
**lawyers** 171:22
**layout** 69:7
**lead** 149:3 150:7
**leading** 150:1
**leads** 109:16 112:25
**learned** 181:17,22
**leave** 106:19 119:12
176:5,8 181:2 201:20
**leaving** 108:10 180:15
181:1 202:3,5
**led** 148:24 152:19
**left** 19:16 47:6,8 57:14
57:15 92:22 170:13
174:6 181:3,16 201:8
201:9,11
**legal** 10:6 11:2 129:11
190:21 204:2,13
206:11 207:15,17
219:3
**lending** 160:15
**length** 54:6
**letter** 80:16 185:6
**letters** 69:23
**let's** 33:14 59:18 61:21
61:21 64:25 65:1
78:17 96:24 107:24
107:24 122:7 145:3,3
205:15 207:19
**level** 1:20 117:3
165:21 200:13
**leverage** 38:17
**leveraged** 39:16

**license** 15:10
**licensed** 14:19
**life** 101:12
**lighter** 72:16
**Lileng** 69:5
**limit** 13:1,6 83:16
**limited** 56:24 57:2
81:3 101:4 219:4
**Lincoln's** 2:23
**line** 26:15,20,23 58:8
89:16 148:21 151:6,9
217:2
**liquidated** 88:15
**list** 90:14 141:25 184:9
200:17,17,21
**listed** 187:17
**Litigation** 1:7 10:23
**little** 20:3 29:2 30:3
39:3 85:10,12,15,19
104:9 142:6 200:4
202:3,17
**LLP** 3:3,8 4:3,7
**load** 40:18
**lodge** 121:15
**London** 1:21 2:19,24
3:13,14 4:4,8,14
10:18,19 14:12 15:7
20:11,20 24:13 26:3
26:4 32:4 37:21
172:13 175:2 193:1
194:7,11 203:15
**lone** 163:11
**long** 25:8,12 67:15,22
67:23 89:3,3 103:22
120:11 132:23
164:16 166:21 182:4
193:19 202:15
**look** 17:6 27:17 37:21
42:12 50:5 51:5
57:15 61:22 74:11
80:5 89:15 91:15
107:2,25 118:6
128:11 129:18
140:16 141:15 182:4

187:19
**looked** 16:17 18:23
19:3 35:7 36:23 83:9
85:2 120:17 154:18
155:4,13,13 173:7,8
198:13
**looking** 22:11 24:2
29:8 33:4 34:6,8
43:12,13 47:10 62:3
62:6 63:23 65:6
74:15 101:1,11
108:19 127:23
134:15,21 151:22
156:2,6 158:12
164:25 167:16
173:12 192:8 199:18
**losses** 39:18,18
**lost** 73:3 117:16
**lot** 14:25 17:21 52:6
65:16,16 72:16 81:4
83:18 91:24 103:10
110:1 142:4,6 181:9
181:10
**lots** 78:19 89:9 139:3
**loud** 31:2 129:25
**loudly** 102:4
**lunch** 142:9
**lying** 141:21

**M**

**Madoff** 6:17 49:13,17
49:24 50:14,17 51:1
52:12,19,23 53:5,8
54:4 55:23 56:15,16
57:5,7,12,21,25
58:12 59:22 61:23
66:17 67:16 68:4
71:11,17,21 72:5
73:11 74:6,16 75:9
75:21 77:8 78:18,21
81:5,23 82:13,16
83:1,8,12 84:4,10,14
85:7 87:10,21 89:16
90:9 91:12 92:8,14
93:1,12,20,23 94:20

Merrill Corporation - New York
www.merrillcorp.com/law

OPTIMAL_BERLAMONT-000070

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 15

95:5,19,20,20 98:19
99:10 100:11,20,22
101:1,3 102:16 103:9
103:15,18 105:17,24
109:12,22 112:3
114:5,15 117:12,12
118:3,12,21 120:14
121:14 128:2,8 129:8
130:22 132:3,6,12,15
133:7 134:2,3 136:6
137:20 139:12,18
143:5,11,22 144:5
146:5,12,15 154:1,8
160:19 165:4,8,10,12
165:15,16,22 166:10
167:9 168:5 171:15
171:24 173:16
178:16 185:10 187:7
187:22 189:1,9,22,24
190:15,18,24 191:11
192:25 202:6 211:16
211:21,25 215:15
**Madoffs** 214:23
**Madoff's** 57:17 94:23
117:20 150:8 154:25
190:5
**Madrid** 29:13,14,16
**magic** 120:7
**main** 25:14 187:18
**major** 42:10 111:8
130:23 131:4 143:16
172:1
**making** 41:19 47:7
155:17 178:22
**manage** 12:19
**managed** 84:3 112:14
132:3 135:6 176:2
**management** 16:19
17:9 19:19,25 22:13
27:3,10,10 31:6,22
31:24,25 32:9,13,25
34:5 35:6 74:9 75:25
84:3 103:6,6 109:24
111:13 136:25

162:24 174:10 183:1
183:4,6,8 184:11
201:6
**manager** 16:17 19:17
36:22 41:9 44:11
47:4 60:6 63:19 64:8
65:23 72:15 73:13
74:11,20 76:7 78:1
78:16,17 80:11 83:19
83:21 85:10,12,25
88:2 90:19,23 91:10
95:17 98:15 100:3
130:3 132:11 174:20
178:5,10,23 179:4,8
186:24 187:1,7,13
188:17,25 193:12,20
200:10
**managers** 38:6 55:16
71:23 72:6 74:2 79:6
80:6 81:2 90:21
160:12 174:21
**manages** 41:9
**managing** 21:18 50:3
51:22
**mandate** 128:5 138:8
138:11,18
**Manual** 8:13,16
**Manuel** 7:10,16,23
9:10 21:23,25 23:7
24:7 26:12 27:12
30:13,20 32:2 33:23
44:15,19 49:24 50:16
50:20 51:17 52:11,21
53:4,7,10,11 55:22
56:16 57:6,17,20,25
58:11 67:4 70:6,7
81:18,21 82:16,20
84:7 85:3 88:21
106:1 107:9 109:23
110:17,25 111:8
117:17 125:21
130:24 136:11,16
137:6,20 140:25
141:2 147:24 149:24

150:4,18 153:25
156:15 158:17,19
162:17,20 189:25
**Manuel's** 107:18,21
159:3
**March** 6:9,14 97:19
104:21,23
**mark** 47:12 97:12
101:16 112:1 123:9
147:16 150:12
176:18 182:11
185:20 196:9 198:23
209:6,25
**marked** 47:15 68:13
97:15 101:15 112:5
123:14 145:12,15
147:18 150:15 156:9
156:10 176:22,24
182:14 185:23
196:11 199:1 208:3,6
209:9
**marker** 109:8 119:10
**market** 47:6,8 73:20
139:19 142:23,24
151:15
**marketing** 32:4,5,8
111:11 172:9 184:1
**master** 41:5,7,9,12,14
41:14,16,17,18 42:7
43:5
**masters** 14:11
**material** 206:11
**materiality** 117:3
**matter** 10:22 192:4
195:1,1
**mattered** 91:3,5 92:2
**Max** 3:12 11:20
**Maxwell** 16:14
**max.buttinger@clif...**
3:15
**Meadows** 171:22
**mean** 15:15 18:25 21:9
23:10 25:12 26:21,25
27:15,16 32:12 33:24

34:4 37:13 38:2 39:5
40:9 42:18 46:16
49:14,14 50:6,23
54:3,17 56:6 57:4
59:11,18,23 60:3,7
61:21 63:12 65:15,16
66:13,15 67:5,6
71:16 73:9 74:11
75:5 78:5 79:24
80:10 82:2 85:18
87:9 88:2,20 89:13
90:24 92:6,11,20
94:18 95:15 98:6
100:18 103:1,17
105:13 108:13,17
109:9 110:14 113:15
114:2,19,21 116:18
117:19 119:17 120:8
122:15,19,22 128:6
128:25 132:5 133:12
137:22 140:14
141:22,24 142:25
143:20 146:20
147:13 149:22
151:13,24 152:16,18
153:7 155:24 156:6
159:20 161:16
164:20 170:5,21
171:17,23 173:11
177:20 180:25 181:4
183:15 187:22,24
189:1 193:16 196:16
199:21 201:13 203:7
209:22 212:25
**meaning** 119:7
**meaningless** 60:6
**means** 45:11 143:2
147:8 198:9 199:23
**meant** 22:17 23:7 29:5
52:3 72:13 73:16
**meet** 21:24 29:16,19
29:25 37:22 51:25
54:9 91:8 129:8
160:6 161:13 178:19

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 16

203:16
meeting 22:3,7 24:7
  24:13 25:10 29:21
  51:21 52:3,6 54:14
  54:22 56:14,20 59:24
  60:2,6,13 116:8
  124:11 133:8 139:12
  139:13 148:12
  162:24 190:15,19
  203:16
meetings 29:20,24
  54:7,20 55:3
MEF 70:5,6
member 31:5,21 33:6
  40:16 163:19 170:15
members 33:9,19
  143:17 144:4 170:22
  171:13,18 200:22,25
  201:1
Membiela 3:7 11:19
memo 212:6
memoranda 123:5
memorandum 104:15
  120:19 212:7,12,13
  212:16,24 214:12
  215:4
memory 61:14 195:10
mentally 62:14
mention 61:2
mentioned 15:9 17:24
  28:3 29:2 43:15,19
  50:16 58:18 75:18
  79:15 87:14 92:1
  99:24 102:5 108:9
  172:7,20 175:5 184:6
  190:14 192:13
mentions 165:16
Mercado 26:17 29:14
  29:17 127:4,8
merited 188:24
Merrill 1:19 10:6,20
  11:2 219:3
message 146:4
met 16:25 29:18 37:24

50:10,24 51:22 54:4
  57:12 59:11 89:16
  127:6,8 128:8 129:9
Mews 12:10
mgreenwald@mgjd...
  2:16
Miami 3:5,9
Michael 2:13 11:8
Michelle 8:4,22
  171:20,20 177:4
  199:4
mid 18:3
middle 69:19 158:2
  159:15 161:10
mind 23:3 61:25 64:24
  109:7 129:25 153:13
mine 40:9
mini 41:12,15,17,18
  42:7 43:5
minute 176:11
minutes 34:25 195:18
  207:20
misrepresentation
  128:22 142:17
missed 25:18 171:6
missing 89:2 155:14
mitigate 182:9
mitigating 167:23
  185:4
Mmm-hmm 172:23
modicum 140:2
moment 30:5 206:25
Monday 1:16
Mondays 26:2
money 36:22 44:11
  51:23 75:24 85:22
  86:2,5 88:6 95:18
  160:13
monitoring 138:7
  188:19,20
month 18:7 171:2
monthly 170:24
months 89:19 136:18
  137:1 140:13,15

167:1
morning 12:15 25:25
Mother 36:14
MotherRock 36:12,14
  37:13,18 38:10,22
  40:1
move 67:11 111:6
  138:6 165:9 179:25
moved 16:10 18:12
  201:13
moving 25:3 72:20
  161:9
multiple 169:13
multitude 71:22 72:6

N

N 2:1 5:1,1 10:1
name 11:25 12:8 16:15
  26:16 34:2 95:22
  117:22 118:5 171:6
names 12:7 33:12 37:5
narrow 33:14,20
NASD 59:10 114:20
national 16:16 17:2
natural 51:9
nature 84:1 102:20
  103:1
near 64:9
necessarily 32:20
  34:22 106:25 113:15
  182:3
necessary 35:11 47:23
need 45:24 50:5 54:9
  66:18 76:21 89:21
  100:8 102:3 107:2
  111:6,17 119:25
  120:2,5 133:17,21,21
  140:20,22 141:18
  149:6,18 165:9
  172:24
needed 27:4 52:18
  53:1,8,19 55:17
  56:22 88:19 103:9
  104:10 106:11
  119:13 137:25 152:9

161:20 163:3 176:3
  181:9 200:1,8
negotiation 25:13
negotiations 25:9
neither 88:24 162:9
never 37:14 53:11
  61:10 89:6 94:22
  117:8 118:11 134:14
  137:13 138:3 144:25
  159:18,22 211:24
nevertheless 71:13
new 1:1 2:6,10,23 10:7
  10:7,8,25 25:3,5
  37:17 58:6,7 68:24
  69:2,3 84:21,24 85:6
  91:18 160:1 178:7,8
  188:6 200:7 201:21
  218:6
nice 80:12 108:7
  181:16
niece 143:24
nine-page 6:16 112:2
nod 12:22
nods 69:24 71:15
non-financial 39:10
non-investment
  159:17,21,22 183:8
  184:10
normal 62:18 71:1,2
  78:11 79:5 81:1
  83:16 147:13 173:18
normally 64:10
  135:25 178:2
note 130:5 133:9 158:3
  185:1
noted 128:7
noticed 155:16
November 136:25
nub 92:21
number 6:20,25 10:4
  10:25 16:13 36:22
  44:11 47:13 48:6
  62:14,15,17 64:7
  79:12 85:24 88:15

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

92:3 97:9 103:14
112:4 115:19 120:15
124:19 125:8 131:11
134:21 142:2 143:14
143:25 145:15
150:13 157:7,15
159:11 160:8 161:9
161:10 163:20 164:1
164:2 177:3 179:6
183:5,24 185:21
196:5 208:6,7 212:20
**numbers** 67:22
**NY** 2:6,10

O

**O** 10:1
**object** 22:21 44:21
55:4,24 58:2 66:2
68:6 70:18 71:19
72:9 77:19 78:8 95:6
100:5 120:20 121:5
164:18 201:24,25
**objected** 63:25
**objection** 13:15,20
46:5 73:10 75:11
76:3,12,20 77:11
95:2 102:17 109:10
110:21 113:22
115:25 118:14
121:16 134:18 144:7
152:22 154:9 187:8
189:17 190:2,12
197:3 206:1
**objections** 13:14
118:18
**obligations** 98:16
**obtain** 15:21 135:8
**obtained** 15:23
**obtaining** 86:11,22
**obvious** 47:21 72:12
**obviously** 23:13 25:12
29:8 31:7 32:12
33:15 83:19 84:23
116:7 128:24 132:9
187:11 190:8

**occasion** 195:11
**occasionally** 80:9
**occurred** 43:3 117:15
**October** 8:9 9:11
136:24 174:7 175:19
209:13
**offended** 58:8
**offered** 61:12
**offering** 104:15
122:25 212:7,13,16
212:23 213:5,14
214:12 215:1,3
**office** 10:7,19 26:4
60:15 62:12,13
172:13 193:1
**officer** 21:12,20 51:21
84:23 173:11 174:12
**offices** 57:17 61:8
**offshore** 41:8 74:14
**oh** 14:22 15:20 53:2
57:4 67:18 73:3
101:24 105:1 107:23
109:14 115:13 123:1
140:12 154:3 157:21
159:13 173:1 198:4
208:12 210:1
**OIS** 20:22 21:1 23:11
26:4 50:3 67:16
79:21 83:2,6,8 84:3
90:23 94:19,22
108:11 126:5,13
132:3 134:2
**okay** 14:2 36:11 66:4
70:15 90:19 96:25
98:5 101:5 105:13
114:21 121:9 139:16
142:7,13 194:5
197:23 199:20 202:9
203:22 207:1 208:16
211:20,24 212:4,10
212:15,19,22 213:4,8
213:24 214:20 215:9
215:14
**once** 19:13 129:9

140:9 163:5 193:10
**ones** 87:2 160:2
183:11
**ongoing** 188:19,20
189:3,3
**On-site** 184:13
**open** 109:6
**operate** 30:25 78:2
136:3
**operated** 65:23 77:15
103:15 104:1 138:2
**operates** 102:21 103:2
**operating** 136:2
151:15 166:2 174:12
211:22 212:1 214:3
**operation** 39:8 71:1
144:1,5 167:18
**operational** 8:12
17:11,13 20:1,6,15
20:17 22:10,18 23:9
23:10 27:18 30:1,12
30:15 31:15 40:1,8
40:10,16,22 54:22,23
54:24 56:24 57:1
58:6 64:5 78:12
86:12,16 87:16 88:22
91:1 99:1 100:13,21
105:16 106:4,22
107:1 108:16 120:8
148:23 153:13 157:6
157:8 159:4,8 160:21
163:14 164:13 167:5
170:18 174:18
175:25 176:4 180:11
181:7 184:17 187:2,6
196:22 198:7,16,22
200:22
**operations** 23:14,24
60:9 80:18 136:2
174:16 182:5
**operator** 4:18,19 10:3
10:5,11,15,17 97:1,8
145:5,10 176:13,20
195:22 196:4 207:21

208:1 215:22 216:2,9
**operators** 152:4,7
**opinion** 158:5 214:17
214:18,19
**opportunity** 24:18
25:4 117:16,18
158:13
**opposed** 178:7,20
**Optimal** 1:7 6:22 8:7
10:22 16:5 17:19
20:21,25 22:9,15,18
23:8 25:15,19,20
27:4 29:10 31:5 32:1
33:16,18,20 35:4
39:23 49:9,11,18,20
51:23 68:4,17 81:6
94:11 104:2 106:19
108:5,14 123:10
131:16,18,21 132:1,6
132:9 138:16 158:14
160:4 163:15 164:24
170:10,13 173:6,12
173:13 175:23 177:9
180:11 183:14
189:24 190:10 193:9
194:19 201:4,8,11,20
201:22 203:11 206:7
210:8 211:25
**Optimal's** 204:20
**OPTIMAL-0021309...**
9:6
**OPTIMAL-0026759...**
7:25
**OPTIMAL-0040668...**
6:5
**OPTIMAL-0049057...**
7:6
**OPTIMAL-0082689...**
6:15
**OPTIMAL-0180484...**
8:10
**OPTIMAL-0312858...**
6:10
**OPTIMAL-03130940**

OPTIMAL_BERLAMONT-000073

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 18

7:18
OPTIMAL-0314419...
7:12
OPTIMAL-0370234...
8:19
OPTIMAL-0374254...
8:25
OPTIMAL-0374254...
8:14
OPTIMAL-03755329
9:12
OPTIMAL-0397206...
8:6
option 198:14
options 96:3
order 73:17 121:17
158:11,25
organization 17:8
20:23 50:11,18 72:21
77:24 109:13 112:13
160:16
organize 54:7
original 102:2 133:5
166:18 208:9 209:16
209:18,25
originally 25:15 52:14
OTC 96:3
ought 130:16 137:24
176:1
outcome 219:17
outside 17:6 100:6
126:5,13 164:18
202:3,8
overall 160:20
overexposing 85:8
overexposure 39:17
overly 81:8,10 82:1,6
oversight 91:6

P

P 2:1,1 10:1
pack 107:15
page 5:2 6:1,18,23 7:3
7:9,15,20 8:3,22 9:3
9:9 48:1 69:20 97:24

104:17,24 112:11
113:14 114:4,11
115:5,6,10,12,13,14
118:7 123:12 129:18
129:19,21 131:7,9
132:24 157:18
159:10,12,14 183:5,7
184:5 186:23 187:17
197:9 217:1,2 218:11
pages 184:6
paid 88:6 160:11
paper 62:15 139:18
162:8
papers 202:13
paperwork 88:24
89:11,20 90:7 178:17
paragraph 72:21 73:4
77:23,25 105:5,8,8
129:23 132:22 146:8
146:8 157:23 158:2
159:16 161:11
177:15
parallel 100:11
pardon 10:12 152:1
part 16:23 17:18 23:15
31:6 49:25 50:6,15
50:17 51:12 52:7
67:8 84:11,12 86:12
100:13 123:22 134:7
159:23 160:5 178:18
183:13 186:7,12
187:21 188:16,18
189:3,6 198:15
199:10 208:24
209:15,16,18 210:8
participant 146:16,20
147:4
particular 16:24 35:25
41:14 42:5,8 47:11
49:21 50:9,14 53:18
56:9,21 60:18 62:3
64:16 74:6,16 77:1
80:11 98:14,16,19,24
103:12 121:7 139:3

139:21 140:18
141:16 167:21
170:22 178:13,20
184:3 188:23 197:7
197:22
particularly 85:9
130:18 162:16
196:21
parties 219:15,16
partisan 203:1
partner 18:18 130:6
party 13:5 42:24 95:17
135:25 191:4 206:16
Pascual 26:18 126:12
126:22 127:1
passage 113:12
passed 15:13
patently 85:13
pause 13:19
Pavement 1:20
pay 137:24 204:12
207:17
paying 204:2,6,10
206:10,10
Peck 16:15
peer 40:13
penalty 218:5
people 18:18,22 19:9
27:17 31:2 32:1
33:24 34:1 40:23
59:12,13,14 62:9,13
62:17 64:3 65:18
74:17 80:6 81:1
85:18 103:23 108:7
110:1 111:11 116:14
126:17 130:19
151:10,15,18,25
155:18 162:16,22
163:22 165:23
171:19 172:9 181:6
182:7 183:25 184:1,1
193:25 198:6 200:24
203:12
Pepe 26:17 29:14,17

127:4
percent 83:17,24 84:2
perception 52:2
perfectly 51:9 79:5
101:9
performance 157:5,8
performed 189:8
period 25:8 90:22 91:7
195:17
periods 138:12
peripheral 33:25
perjury 218:5
permit 17:3
Perry 8:22 171:20
199:4
person 31:16 32:4,8
80:21 91:8 116:25
118:5 128:24 165:3
165:15
personally 159:8
perspective 91:2 195:4
pertinent 152:10
Peter 143:22,25
Phillip 4:19 10:6
phone 80:8,9 129:11
139:2 147:1,14 193:3
193:18 195:17,17
203:8,14
physical 191:1
pick 147:13
picked 147:1
picture 90:22
piece 162:8
pieces 17:23 89:2
pin 192:12
PIRQ 199:22 200:11
200:12
placating 141:7
place 24:8 60:15 87:13
124:12 136:24
178:17 198:2 201:16
plaintiffs 2:3 11:6,10
11:14,16
plan 28:21,22

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 19

plant 14:9
platform 62:6 174:13
play 80:24 170:5
please 11:3 12:20
    13:24 14:7,16 61:11
    144:16 148:9 165:19
PLLC 2:13
plugging 53:20
point 18:11 27:19 36:1
    47:11 50:9,14 53:18
    59:1 60:11 63:10
    65:20 68:1 69:14
    79:21 80:20 85:1,1,8
    105:24 109:7 115:4
    119:11 130:23 131:4
    131:11 134:21 138:6
    139:3,7 140:19
    141:17 142:2 143:14
    155:17 159:10,11
    160:7 161:9 165:25
    170:23 171:19 175:6
    181:1 183:5 191:24
pointed 186:14
pointer 100:25
points 80:17 115:20
    115:23 139:22 169:1
    182:6,8 200:17
Poiret 44:1
Policies/Procedures
    8:16
Polly 16:15
ponzi 101:8 211:22
    212:1
Popat 32:3
portfolio 50:3 83:10
    171:2 178:7,10 188:6
portion 7:20,22 50:2
    51:22
portions 208:9,11
position 19:15,24 21:5
    37:12 50:19 109:17
    109:18,19 139:23
    163:1,8 188:11 206:5
positions 138:12

possibility 44:3 119:23
possible 12:20 13:18
    68:7 94:1 114:6,16
    182:7 188:7
possibly 47:2 81:8
    82:6 90:9
post 139:13
potential 108:18 115:8
    115:17,24 119:20
potentially 66:23
power 30:16,17 31:1
    31:11,12 32:10,13,19
    35:3,12
practice 16:11,20
    18:12,17,21 19:8
    83:16
practising 15:15
practitioner 14:20
practitioners 17:13
precise 83:25 101:12
    127:10
precisely 54:18 67:22
    177:21 181:20
preference 31:15
prefers 78:2
preparation 183:25
prepare 105:18 107:9
    116:5 118:23 123:22
    124:10 145:20
    161:12 163:4 171:3
    186:3 196:18 202:12
prepared 25:17 31:18
    37:16 92:23 118:20
    118:24 119:1 123:21
    124:1,25 182:24
    183:22 186:4,7,18
    197:10 211:16
preparing 183:12
    202:15
presence 26:4
present 116:7 117:14
press 51:3 98:23
pretty 48:10 60:6
    195:9

prevails 205:12
previous 109:4 116:9
previously 130:7
    172:7,20 175:5
    190:14 192:13
    201:14
pre-investment
    187:23 188:2,14
    199:23
pre-meeting 56:16
    57:7,10 58:1
price 73:21 88:3
    139:20
prices 139:20
primarily 17:3 34:12
    42:19 50:20 183:25
primary 21:19 69:11
    69:12 127:19 183:8
    184:9
prime 42:7,18,19,21
    43:2,2,5,10,12 84:21
prior 16:4 30:21 50:24
    50:24 56:14 82:13
    104:25 166:22
    180:15 191:18,20
    199:25 214:5,6,10
privilege 120:21 121:5
    121:16 205:10,12
    214:7
privileged 205:2,6
probably 14:22,24
    17:12,16,16 24:10,12
    36:18 37:3 38:20
    44:1,2 46:19 56:12
    59:17 60:5 63:24
    90:8 110:5 129:10
    136:18 142:12 147:1
    161:6 165:23 167:1
    168:19 172:18 174:5
    191:7 200:24 202:17
problem 16:22 65:3,15
    78:12 90:2,3 92:13
    108:5 119:3 122:4
    140:8

problems 16:14,18
    18:23 36:9 87:23
    90:3 119:23 126:15
    173:6
procedure 20:8 71:2
    193:6 195:4
procedures 8:17 20:6
    60:10 135:24 160:21
    183:9 184:10 198:2
    215:7
proceeded 19:5 37:14
proceedings 141:24
    219:10
process 8:8 12:19
    25:12 37:10 92:21
    98:12 99:10 103:6,6
    103:22,25 106:18
    108:10 128:23
    139:14 142:17 160:1
    178:4,9,18 186:14
    187:22 189:3,4
    198:21 199:18
processed 24:3
processes 24:4 164:10
    186:12
produce 111:22
    161:14
produced 80:16
    105:21,22 111:17
producing 111:15
product 178:14
    199:17,19 200:5
professional 12:7,9
    14:15 16:4 23:23
    80:15 85:17 164:13
    167:5
professionally 112:13
professionals 14:24
    23:19 39:11 151:16
    152:8,17
profitability 76:10
profitable 72:25 74:21
    75:19,20
promotion 18:16 21:9

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 20

24:19
proper 87:13 108:24
150:2
properly 135:2,9
proposal 24:16,17
proposed 127:13
proprietary 42:4,4
prospect 25:7
protect 55:14 66:22
81:7,10,23,24 82:6
176:3
protecting 173:12
protection 14:10
16:21 18:13,17,21
19:8
protective 55:10
prove 110:15
provide 13:6 28:9
146:11,23
provided 168:10,14
provides 71:13
provision 160:13
Pty 219:4
publication 106:17
pull 211:6
Pump 4:13
Punjab 14:10
purchased 134:2
purported 93:3
purportedly 75:25
144:2
purpose 29:23
purposes 47:18 161:6
pursue 206:24
pursuing 164:10
push 54:9 56:21
pushed 89:13,14
put 13:16 17:2 24:12
46:16,17 54:3 64:16
93:1 96:9 103:19
139:18 144:19
145:14 149:18 150:4
165:2 174:4 190:23
193:13 205:15

206:11,25
puts 96:4
putting 77:4 121:11
121:21 191:9
p.m 97:5,7 145:7,9
176:15,17 196:1,3
207:23,25 215:24
216:1,14

Q

qualifications 14:15
qualified 23:19 106:8
106:21 149:3,9 164:3
164:6
Queen 4:3,7
queried 193:12
querying 148:14
question 22:22 44:22
46:6 55:5,25 56:9,22
58:3 59:4 71:20 76:4
76:13 77:12 78:9
81:11 96:8 102:18
111:19 114:23
130:21 146:24 147:6
148:13 149:1 166:19
166:20 167:20,23
201:25 203:19
questioning 58:9
questionnaire 188:3
188:15 199:24
questions 13:15 45:24
47:18 50:25 52:10
54:25 55:15 56:18
58:21 59:21 66:24
78:3,19 79:4,18,22
79:25 80:12,13
116:18,22 152:10
211:3,4 212:5,10
quickly 49:17
quiescent 78:2
quirk 41:2
quite 15:25 16:6 21:16
26:17 28:23 29:22
33:20 38:3 47:20
49:16 50:9,11 55:17

87:23 121:24 126:17
132:23 141:22 164:9
166:24 171:18,20
172:4 176:1 192:10
212:2

R

R 2:1 10:1
raise 60:25 61:5 96:20
117:7
raised 62:6 89:24
96:19 117:17 119:2
raising 117:5 155:20
Rajiv 1:13 5:3 6:3 7:3
7:9,16,23 8:3,24 9:3
9:9 10:21 12:3,9
57:20 97:4,10 140:16
141:15 195:25 196:6
216:12
ran 104:1 111:13
rang 90:10 135:20
139:8 140:11 180:16
207:12
range 45:19
ranges 139:20
rare 37:11
rate 138:11
rationale 34:13 159:24
Raton 2:15
reached 25:23 127:12
127:13
react 180:2
reacted 212:2
reaction 59:8 89:21,25
141:9
read 36:17 40:4,6,14
43:17,21 45:7 51:3
61:13 70:16,23,25
71:2 105:7,10,11
107:24 109:16 139:5
148:9 202:13 218:7
reading 70:19 129:25
146:1
real 60:12 64:12
realistically 169:2

reality 62:1
realization 108:21
realized 91:22
really 17:19 22:9
23:25 27:4 28:2
33:25 37:14 42:12
44:3 48:14 49:8 51:3
52:15 53:23 57:23
58:17 60:13 66:17
71:21 72:5 80:2,4,15
81:4 83:25 92:18,20
92:21,23,24 95:23
99:4 101:13 102:20
103:24,25 104:5
106:5,10 108:3,24
111:4 114:23 116:16
116:20 119:21
126:19 128:21
130:15 140:8,20
141:13,17 148:14
155:18 158:25
160:23 169:12
175:24 178:18
187:21 189:5 191:17
195:3 198:20 203:1
212:25 215:12
reason 18:5 40:19
41:21,25 48:8,16
70:22 92:22 99:15,17
99:19 101:10,25
102:3,12 112:18
124:6 130:8,20
135:13 136:14
145:22,23 148:2,5
151:1 156:23 160:5
175:22 177:11
183:18 186:15 197:1
199:13 209:2 210:12
reasonableness 140:2
reasoning 158:21
reasons 39:2 40:21
45:25 63:24 76:15,18
80:7 84:19 135:11
147:5 157:16 179:21

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 21



180:18 192:10 202:2
  202:5
recall 15:24 26:21
  34:23,24 41:22 45:15
  52:16,17,24 53:23
  58:14 70:12,13,17
  75:12 77:3,20 82:23
  83:25 88:14,21 89:18
  90:5 96:21 101:14
  125:24 127:10
  136:21 145:21
  146:25 147:11
  155:14 169:12
  189:18 190:16 191:3
  191:17 197:6,21
  212:9,11,15,22 213:2
  213:4,12,16 214:25
  215:3
recalled 193:10,13,15
  194:15
receipt 135:4
receive 15:1,6 48:9
  51:10 138:11 139:18
  199:7,10 209:20
  210:4,7
received 48:13,20,23
  70:15 88:7 123:3
  138:3 147:14
recipients 177:3
reckoned 90:24
recognize 47:24 97:22
  123:17,19 147:20
  156:18 182:16,18,20
  185:25 196:13
recognized 27:24
recollection 30:10
  37:6 48:19 49:5 68:2
  83:23 84:4 102:15
  117:25 124:23 168:1
  200:21
recommend 84:13
recommendation
  37:16 71:7
reconciliation 60:22

record 13:16 53:6 66:5
  67:1 96:24 97:2,11
  137:19 144:17 145:4
  145:6,11 176:10,14
  176:21 195:21,23
  196:7 207:19,22
  208:2 215:23 216:3
  216:10 219:8
recorded 24:3 80:9
  130:6 173:14 219:5
records 68:9
recovery 14:23 16:12
  134:22
recreate 17:20 22:14
recruited 82:9,15,25
  163:21
recruits 166:25
red 144:11,14,18,23
  144:25 188:4
redacted 7:21,22
redesignation 21:10
  21:19
reduced 84:14
refer 20:25 60:16
  98:10 125:7,10
  157:17
reference 61:15
referred 70:1 98:11
  199:24 211:2,11
referring 21:2 52:21
  52:23 53:3 67:4
  75:22 81:13 99:24
  102:11 104:13 112:8
  119:16 125:2 130:10
  132:13,17,18,19
  149:10,12 151:19
  172:13 183:4,7
  214:21 215:5
reflect 31:7 115:23
  151:23 214:2
reflected 90:4
reflecting 158:5 199:4
reflects 97:18 145:17
  156:15 208:19

209:12
refresh 61:14 68:2
  102:14 117:25
regard 179:7
regarding 109:22
  212:6
regardless 40:11
register 13:20 74:19
  75:17 76:6
registered 73:12 75:4
  75:5,9 77:8
registration 76:11
regular 138:9,17
regularly 195:2
Regulation 114:4,11
regulators 178:16
regulatory 88:12 91:6
related 154:19,20,22
  154:23 215:6
relates 153:21
relating 201:22
relation 20:21 98:13
  102:16 103:9 120:16
  127:14 131:17
  173:17 183:1,3
  196:21 200:7,15
  214:23 215:13,15
relationship 36:20
  56:3,7,11 66:8,10
  67:3 81:25 82:12
  130:3 190:5 201:15
relationships 34:7
  55:10 108:22
relative 46:25 47:9
  124:18 219:14,16
relaxed 31:4
relevant 98:25 107:6
  152:10
relying 128:24
remains 71:11
remember 18:5 21:16
  28:23 29:22 33:13
  37:3,18 38:12 39:23
  41:25 44:3 48:15

53:16 54:14,14 57:18
  57:19,23 58:17 59:2
  59:4,7 61:13 80:1,11
  88:1 101:12 124:15
  124:17 131:24 132:7
  134:13 139:4 146:3
  147:2 168:13,16
  170:21 171:18
  193:19 212:18
remembering 37:5
remembers 62:22
remind 82:3
remit 84:11,12 106:2
  134:8
remote 114:7,16
  119:24
remuneration 73:22
repeating 23:4
repercussions 66:11
rephrase 153:16
  189:23 197:17 204:1
replayed 193:24
report 6:16 26:9,11,15
  26:20 40:12 41:3
  61:1,14 64:16 69:11
  69:12 70:16 71:25
  72:8 76:24 77:5
  88:17 91:12,14 96:22
  98:8 105:19,23 106:2
  106:14,17,22 107:8
  107:20 108:9 109:8,9
  109:11 110:18
  111:11 112:2,7,15,19
  112:22,23 113:1,3,20
  115:6 116:2,6 118:20
  118:23 119:1,2,4,7,8
  119:9,15,16 122:20
  122:23 124:14,18,19
  124:20 125:2,3,8,11
  125:11,16 126:2,4,23
  127:1,9 128:7 129:1
  133:10 135:16,22,23
  136:4,5 137:7,21
  138:4 161:14 166:13

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 22

167:10 168:11,18
169:14 170:16,17
171:16 172:22 173:8
173:25 174:3 185:2
185:16 189:2 191:21
211:8,11,15,15,21
**reported** 24:5 30:13
65:7
**reporter** 1:24 11:1
12:23
**REPORTER'S** 219:1
**reporting** 26:23 88:10
170:25 171:2
**reports** 26:13 71:3
72:17 80:20 85:14
90:25 91:9 111:14,16
111:21 116:9 126:16
126:20 146:6 160:1
161:13,18,21,23,24
162:14 163:3,4,9
173:8 189:10,13,15
**represent** 11:4 68:2
208:8
**representing** 11:24
**reputable** 59:13
**reputation** 92:25
176:3,7
**request** 34:9 126:9
130:3,9
**requests** 146:11
**required** 178:16
**requirement** 161:13
**requirements** 178:20
**requires** 121:16,17
**research** 68:24 69:2,3
69:9
**reserve** 210:19
**resident** 17:4
**resign** 175:12
**resignation** 136:19,22
137:2 175:10 179:15
180:13 181:13
**resigned** 135:12,14
175:6,13,22

**resolve** 16:23 134:4
**resolved** 134:14 145:1
**resolves** 134:12
**respect** 33:18 35:17
40:4 87:21 96:15
99:23 101:3 110:25
118:12 127:8 167:9
173:24 174:3 185:8
201:21 202:20 203:5
**respective** 184:2
**responded** 61:19
180:23 207:5,10
**responding** 99:7
**response** 51:2 99:11
101:2 102:21,22
103:2 109:14 111:2
140:22 147:10 157:3
157:9,12 172:25
207:11
**responses** 12:21,21
188:10
**responsibilities** 20:21
99:3 123:23 177:9
183:14 199:11
208:25
**responsibility** 30:6
**responsible** 30:12 85:4
174:16 183:17
**restrict** 122:1
**restrictions** 195:12
**result** 39:18
**retrieve** 193:22
**retrospect** 181:23
**returns** 75:24
**review** 40:8,13 113:24
130:4 153:3,10,11,14
153:18,24 154:4,7,11
154:13,16 160:7
188:25 199:24
200:14
**reviewed** 41:3 112:15
135:2 153:23 154:1
166:12 187:10
212:16,23 213:5,13

213:18
**reviewing** 188:1
**Reynes** 26:18,18
126:12,22 127:1
**re-examination**
215:19
**re-examine** 210:19
**Richard** 2:17,18 11:11
11:12,13 202:24
**richard.homewood...**
2:20
**right** 10:16 14:4 18:9
18:10 20:17 23:2
29:15 36:6 37:14
41:24 53:9 59:18
61:6 68:23 82:8
87:22 93:3 94:25
101:9 102:7 113:7
114:13 117:21 118:1
123:6 128:15 129:14
129:18 137:8 141:18
146:21 154:8 155:18
164:2 178:1 184:11
193:14 194:13
197:10 205:5 211:13
212:10
**rights** 87:1,2
**right-hand** 113:7
**ring** 30:7
**risk** 8:12 16:19,22
21:11,20 26:19,25
27:2,3,9,9,10 29:3,6
29:8,9,11 30:2,2,12
30:15 40:11 42:2
43:13 51:20 84:23
85:4,5 86:7 115:8,17
115:24 142:16 144:3
171:1 173:11 175:23
176:1 179:24 180:21
180:24 183:1,4,6,8
184:10
**risks** 24:6 116:1
119:20 120:2,3,4,6
120:13 121:13 173:9

173:10
**Road** 2:14
**robustness** 148:24
**Rock** 36:15
**role** 33:5 141:7
**rolling** 52:9
**room** 62:8 67:15 69:8
166:4 172:8,10,12,18
172:19
**Ross** 16:8,11
**roughly** 16:1
**route** 92:23 121:7
**rubbish** 40:18 90:1
**rules** 12:18
**run** 106:24 109:19,20
109:23 119:22

S

**S** 2:1 5:1,1 10:1
**safe** 86:5
**Sam** 11:17
**SAMAD** 4:6
**sample** 63:13,18 64:23
117:1
**SAMUEL** 3:3
**Santander** 16:5 17:19
20:19 21:6,22 22:11
26:5,10,14 27:22
28:4 29:7,11 30:7
37:8 48:24 49:3 54:2
79:22 84:15 112:16
123:24 124:2 126:8
126:11,23 127:2
156:21 166:23 171:1
174:6 175:7 180:8
186:9 192:24 193:8
194:20,21 196:24
197:20 199:11 201:4
202:24 204:9,12
206:10 207:10
208:25 210:10
**Santander's** 20:24
**SAS** 1:7 10:25 135:15
135:22 136:4,5 137:7
137:21 138:3,4

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 23

185:15
sat 172:19
satisfaction 89:7
save 218:9
saw 57:17 127:1
151:15
saying 36:21,22 44:10
52:18,22,25 53:7
54:15 71:25 82:9
93:5,21 111:15,18
114:14,17,25 119:19
119:24 129:14
133:17,19 137:19
143:6 153:10 154:10
154:12 163:2 181:16
191:25 193:25 207:8
209:24
says 61:9 62:12 68:24
69:20 71:6,6,10
72:22 77:25 109:12
113:7 115:7 124:13
128:12 129:18
131:11,15 133:2
134:22,25 138:8
139:25 142:20
143:15 145:22 146:9
146:14 151:7 158:1
159:16 177:15,16
184:13 206:21
scale 169:3
scenario 79:6
schedule 165:1
scheme 101:8 211:22
212:1
science 14:9 63:8
scope 100:6 164:18
165:5 202:1,3,8
scratch 186:19
screen 10:18
sdanon@hunton.com
3:6
searching 152:10
Sebastien 44:1
SEC 75:10 76:11 77:8

146:6
second 53:5 60:16
65:6 71:6,9 72:21,21
73:4,5 104:17,24
105:5 112:11 138:8
146:9 151:9 159:12
159:14 177:14
204:25
seconded 171:9
seconds 215:20
second-to-last 143:15
secretive 71:12,17,23
71:25 72:13 90:19,20
section 72:3 130:14
214:12,20,25 215:1,9
215:10,11
sections 129:22 183:13
183:22 184:2
securities 6:17 14:21
75:6 112:3 114:5,15
139:21
see 37:22 38:6,7 48:1,5
52:1,18,19,23 53:1,2
53:8 57:10 60:20
61:1,10 63:24 64:1
68:15,23 69:19 71:7
71:9 73:2,7 77:25
78:4 85:14 87:25
88:17 89:20,21,23
90:17 97:17 98:2
101:23 104:17,24
105:4,7 115:6,19
118:17 126:16,19
129:22 130:20
131:10 134:24 136:5
138:8,19 139:19
140:11 142:17,20
143:18 145:17 146:7
147:23 148:21
149:20 150:17 151:6
152:7,14 153:5
156:14 157:22 158:1
159:15 161:10 177:2
177:15 184:9,13

185:3 186:23 197:19
199:3 200:16 208:12
208:18 209:11 210:1
214:13
seed 160:3,4
seeing 197:21
seen 47:25 61:1 72:17
89:10 90:14 109:16
127:4 151:16 170:2,4
182:22 189:11,13,13
189:14,15 197:24
202:22 213:1
segregated 91:4 92:16
135:3,10
segregation 127:22
selected 19:6,8 134:1
self-custodied 93:7
96:6
self-custody 94:1,6
selling 27:19
send 125:15 126:4,7
148:3 156:20 170:25
171:4 177:6 188:2,9
208:22,24 209:20
210:4,7
sends 146:5
senior 19:17 21:8,11
21:16 32:1
sense 43:9 56:23 60:15
62:16 63:18 65:22
74:10 93:23 104:3
153:22
sensitivity 61:2 130:2
sent 38:4 49:6 61:15
98:7 100:13 114:1
125:17 148:18
150:21,23 177:8
181:15 202:14 207:8
209:22
sentence 71:9 72:22
73:5 77:24 131:15
132:23 134:24 138:8
142:20 143:15 146:9
151:5 152:25 153:20

separate 98:21 132:8
September 7:24 8:24
156:16 199:5
series 47:18 69:22
91:8
serious 87:3 141:13
175:23,24
servers 195:8
serves 195:10
Services 6:22 20:22
21:1 123:11
set 22:3 65:6 72:23
119:3 127:18 131:17
132:15 135:3,24
136:3 140:23 157:14
167:23 174:22 210:4
sets 157:5,6 158:21
175:21
setting 118:17
settle 42:22
settlement 42:25
settles 93:10
set-up 91:3 92:4,7
93:15
seven 112:2
shake 12:22
shakes 99:22
share 73:24 125:15
Sharmila 164:3,19
203:8
sheet 42:3
she'd 201:12
short 35:23
shortly 57:14 142:11
201:9,11 207:5
show 150:10 208:5
showed 126:18 200:14
211:7
shown 169:17
shows 64:24 129:6
182:1
shut 56:22
side 30:2 80:16 92:24
154:25 155:5,8,9,21

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 24

155:24 156:4 185:6
196:22 198:22 203:2
sides 203:2
sight 42:9
signatory 88:13
signed 90:7,8 218:17
219:21
significance 61:24
significant 50:2 63:17
64:23 65:12,13
signing 191:18
silly 86:24
similar 17:20 27:23
130:9 173:16 174:14
simply 60:24 161:13
single 83:17,19 132:11
sir 97:11
sit 60:8
sitting 41:13 52:9
61:23 62:6 92:17
172:9,16
six 167:1
size 83:1,5,11 84:16
117:1 172:18
Slade 2:18 11:13
sleeves 52:9
slightly 34:4 69:6
113:12 172:17
174:15
slog 103:23
slow 76:21
slowly 108:21 163:17
163:24
smaller 17:22 172:17
smooth 108:1
smoothly 12:19
social 203:20
sold 134:2
sole 95:14
SOLICITORS 2:18
Solutions 10:6 11:2
219:4
somebody 16:25 17:5
23:25 34:8 35:10

40:12,13,25 56:3
58:16 60:7 61:9
62:12 66:23 79:8
80:2 95:14 117:5
139:17 143:6 164:8
sons 62:5 143:25
Soosaipillai 164:3
166:11,22 167:9
168:3 171:12 172:21
173:23 179:16 201:2
sorry 10:11,12,15
13:13 22:24 23:3
25:18 36:13 43:18
44:23 53:2 66:3 70:3
76:21 82:3 93:8,17
101:13,24 102:3
110:24 115:10
120:24 122:21,24
125:3 128:10 131:9
132:24 138:25
142:14 143:23
149:11 151:22
153:15 157:19
159:12,13 164:4
165:15 171:5 173:1,1
175:16 189:19
191:17 194:8 208:13
210:2 214:13
sort 17:20 19:4 21:12
21:18 23:18 24:11
28:24 30:1,24 32:21
34:7,22 41:1,13 52:5
59:12 60:20 62:16
63:17 74:25 79:5
83:25 85:6,9 89:2,4
90:10 91:22 92:24
100:25,25 103:21,25
105:14,23 106:15
107:23 109:7 111:15
113:16 114:24
116:24 117:4 129:11
139:16 140:2,5,11
141:6,7 144:20
148:15 153:3,11,18

153:24 154:11,15
158:21 160:12
161:22 167:13 171:9
171:25 173:9,10
180:16 189:5 193:12
193:19 198:21
199:22 200:13
201:15
sorted 28:14 88:24
89:3,5 91:24
sorting 88:19
source 64:21
sources 156:7,8
Southern 1:1 10:24
Spain 178:16,20
Spanish 178:14
199:17,19
speak 57:21 116:15
117:9 118:11 144:19
speaking 10:5 122:8
152:5
specialist 23:23 176:4
193:21
specialists 23:13
specializes 23:24
specific 37:5 45:15
48:19 61:2 100:21
103:18 171:25 172:1
184:4 187:23 214:12
214:20
specifically 36:4 45:6
46:10 52:12 58:13
70:20 82:10 85:19
126:10 182:22
196:15 197:6,21
208:11 213:2,16
215:2
specify 30:6
spectrum 86:18,19
speculate 69:13 147:8
speculation 69:16
speculative 72:10
speed 49:17
spell 164:4

spend 25:25 142:3
188:12 202:15
spending 188:1
spent 16:6 17:7 26:3
split 45:22 46:3,14
47:1 198:14
spoil 56:2,6,11
spoke 105:25 118:5
122:11 128:10,11
129:10 146:10
spoken 140:9
spreadsheet 139:19
square 2:19,23 89:2
SSE 70:11
stage 35:24 85:3
103:20 109:3 212:18
stamped 6:5,10,15 7:5
7:11,17,25 8:6,9,13
8:18,25 9:6,12 68:14
113:13 157:20
stamps 47:13 97:13
101:17 102:10
145:16 147:17
150:13 156:11
176:25 182:12
185:21 196:9 198:24
209:7
standard 62:4,7 92:10
93:13,14 167:17
198:19
standards 88:12
standpoint 134:16
stand-alone 80:3
93:15
start 14:5 16:9 104:3
109:5 139:14 163:18
163:25 201:21
started 18:8 21:7 22:5
26:10 28:4 67:16
84:15 91:23 106:18
119:11 141:12 200:1
starting 13:10,19 79:4
79:17,25 188:11
starts 105:5

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 25



stat 45:20
state 11:4 133:6 218:6 218:14
stated 133:7
statement 95:4 160:7
statements 60:23 94:23 188:22
states 1:1 6:20,25 10:24 75:7 112:4 123:10 218:6
statistically 63:17 64:22 65:13
stenographically 219:6
step 122:7
stocks 95:24 128:9,10 134:1
stop 58:20 59:20
stored 170:8 193:7,8 194:6,11 195:8
straight 35:18 53:17 125:13 141:24
strange 51:13
Strategic 68:17
strategies 45:14
strategy 42:5 45:13,16 45:22 46:3,14,15 47:1,9 71:12,18 133:4,18 140:21 198:13,14
Street 3:13 4:3,7 10:7
strengthen 28:1 182:8
strictly 93:4 134:9
strike 23:20 26:8 45:22 46:3,14 47:1 72:4 82:14 125:5 149:7 151:5 157:11 198:14
strong 22:9,18 23:8 27:3,11
struck 41:4
structure 24:1 41:11 41:12 73:12 74:16 77:15 138:1

structured 73:14 74:12
structures 160:15
structuring 74:7,18
Struggles 22:2
stuff 129:12 133:15 139:4 167:17
subject 192:4
submanaged 132:3
submitted 136:19,22 136:23
subsequent 30:19 183:11 191:2
subsequently 57:16 117:9 190:20
subsidiaries 29:9,10
subsidiary 20:23 131:23
substance 111:19,24 161:19 163:7,10 168:19 194:4 203:6 203:20
substandard 161:13
substantial 168:17
substantiate 110:9
substantive 180:17
successful 81:2
Sucharow 2:5,9 11:6
suddenly 80:21
sue 19:1
sued 16:22
suffering 114:5,15
suggest 169:4
suggested 17:1,5
suggesting 153:9,19
Suite 2:14 3:4,9
sum 191:7
summarize 127:16
summary 115:8,16,23
support 140:25 141:3 149:25 158:6,15,22 158:25 159:3,6 163:8 180:24
supported 158:10

supporting 158:19
suppose 87:4 119:4
sure 12:20 15:25 23:6 26:17 28:16 31:2 34:20 45:9 48:10 61:20 62:20 67:12,21 70:4 120:5 128:5 130:1 133:11 147:6 151:14 153:3,11,17 154:6,11 166:24 171:21 182:25 197:24
surname 34:2
surprised 83:11 141:23 180:3,4
surprising 72:1 83:21
SUS 33:16,18,20 34:9 35:4 49:9,11 68:4 94:11 131:19 132:11 177:15,17,25 179:3 211:18 213:7,8,9,9 213:10
suspect 40:3 55:7 70:24
SVPs 21:17
swear 52:15
sworn 5:3 12:4
system 40:10 60:21
S&P 128:9,9 133:7

**T**

T 5:1
tail 116:20 118:16 150:10 191:6
take 10:20 12:23 13:24 15:14 24:8 42:2 45:2 61:18 78:22,24,25 85:7 96:23 111:11 122:7 142:8 167:12 167:13
taken 1:18 10:22 13:14 35:1 40:15 49:23 97:6 145:8 176:16 196:2 207:24 208:12 215:25

talk 29:25 37:22 178:2 178:4
talked 30:24 31:9 161:19 169:3 179:10 211:7
talking 17:7 57:5 77:7 112:8 178:3,5 206:20
tape 97:2 194:15 195:19,24 216:10
taped 80:8 192:15,17 193:4 195:13,17
tapes 80:24 192:20,23 193:7,13 194:19,23 194:25
Tasneem 32:6 52:14 138:24
tax 74:13
team 16:21,23 17:15 17:18 18:13,15,17,21 19:3,8 20:6 23:16,18 29:8,11 40:17,22,24 68:24 69:2,3,9 99:2 108:16 125:18,21 130:6 157:7,13 158:11 163:16,17,20 163:23 164:21,24 165:7,13,20,24 169:16 170:15,19,22 171:13,19 172:5 173:21 175:25 179:20 183:16 186:4 186:19 200:18,22,25 201:1,17 203:16
teams 17:17 182:2
team's 186:8 198:15
technical 16:17,18
teeth 19:13
telephone 2:7,11,15,20 2:24 3:5,10,14 4:4,8 4:14 190:17 191:2,10 192:5,14 195:15
tell 13:9 16:3 20:3 38:23 40:5,14 52:11 54:20 58:11,20 60:10

OPTIMAL_BERLAMONT-000081

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 26

69:25 97:23 100:2
105:8 120:8 136:16
146:1 148:9 157:1
162:19 165:19 175:9
179:22 184:4 190:7
**telling** 129:3 138:2
**tells** 38:21
**template** 186:24
**Temple** 4:14
**tend** 19:13,13 62:14
64:14
**tended** 35:20
**tensions** 55:19
**tenure** 180:7
**term** 45:21 59:7
108:15 144:13
**terminology** 59:5
178:2
**terms** 16:4 25:9 26:23
32:18,18 33:21 34:6
34:12 36:19 37:10
40:21 46:14 58:6
60:5 64:23 65:13
80:18 81:5 83:18
86:23,25 87:6,7,15
87:16,18,20 89:1,15
92:12 99:2 114:19
128:4 155:15 168:24
169:1 173:15 174:4
181:3 188:8 195:7
**terribly** 89:12
**test** 60:17 61:5,7 63:4
63:5,11 64:5 65:11
65:25
**testified** 12:5 100:12
100:19 211:14
**testify** 13:2
**testifying** 212:11
**testimony** 203:6
211:10 213:19,22,25
219:5,9
**testing** 63:18
**tests** 133:12
**Tetragon** 146:4

**text** 209:17
**thank** 10:12 12:11
14:1 67:24 97:11
113:9 118:9 145:11
149:16 161:7 176:21
177:1 195:21 196:7
203:23 210:15
215:18 216:3,5,7,8
216:13
**Theoretically** 87:9
**thereof** 219:11
**they'd** 41:21 80:22
114:20 207:17
**thing** 173:20 176:2
179:2 207:14
**things** 32:17 38:14
41:4 43:12 55:12
60:14 65:10 81:4
84:20 86:9 91:5,16
100:25 104:6,7
107:22 108:2 109:9
117:4 120:17 128:7
129:5,16 139:11,13
141:6 158:24 167:16
173:9 178:15 179:6
185:6 187:20,23
200:7,9
**think** 14:22,24 17:1,16
21:7,8,12,14 25:14
25:15 26:16 27:1,6
27:12,22,24 28:11,20
28:24 29:20 30:8,11
32:11,18,21 34:21
35:21 37:14,16,19,23
38:5 39:17 40:14
43:25 45:8 49:14,16
49:19,22,23 50:8,20
51:1 52:1,1,3,7,13,24
54:19 55:8 56:1,12
57:14 59:16 62:1
66:12 67:18 69:6,7,8
70:3 72:11 75:21
81:24 83:24 86:14
89:15,20 90:3,6,14

96:22 98:9 99:17,25
100:18,19 101:4,21
103:4 105:19,21,21
107:14,21,21 108:4
110:5 111:2,20
112:24 113:6,10
114:2 116:10,13
117:11 118:4,17
120:20 121:4,6,15
126:14,18 129:1,10
129:13 134:12,16,16
136:24 138:23 139:4
140:9 141:20,22
147:8 149:6,18
152:12 153:21 157:4
158:20 159:4,6,7
161:5 162:15,21
163:13 164:12,22
165:4,6 166:6 168:19
169:15 173:7 175:20
180:16 181:1,22
184:5 189:1 190:16
191:7 193:9,10,11
195:4 200:23 202:2,7
202:22 204:10
205:25 206:24 207:5
209:24 211:1,10
212:4,6 213:1,7
214:5 215:6,21
**thinking** 32:12 119:11
141:12
**third** 13:5 77:23 95:17
146:8 206:16
**Thirteen** 67:20
**thorough** 181:9,11,12
**thought** 32:14,14
51:13 54:21 56:11
87:2 104:10 107:16
108:15 127:3 129:4
130:15 140:10
172:21 178:19 181:5
181:9
**three** 18:18 162:16
**throwing** 129:13

**Thursday** 25:25 26:1
**tickets** 139:18
**tidied** 80:18
**tightened** 80:19
**time** 10:11,17,18
13:24 16:8 17:6,10
24:16,23 31:19 36:19
39:22 47:11 49:2,11
49:22 50:7 51:11
54:6 63:25 67:22,23
75:15 76:18 78:6
79:11 81:1 82:24
89:3,16 90:8,22,23
91:7 97:2,11 110:2
113:12 118:18
119:11 124:1,3
133:24 136:20
138:22 139:6 140:5
141:21 142:4,12
145:6,11 161:18
162:13 163:21 169:3
170:9 172:2 175:6
176:14,21 179:25
188:1,8,12 189:9
195:23 196:7,17
200:4 204:10 206:10
207:22 208:2 210:19
215:23 216:3,10
**times** 79:13
**timing** 88:3
**title** 20:14 21:5
**titles** 21:10
**Toby** 32:5
**today** 11:1 13:2,7
20:25 47:20 61:23
146:10 158:4 189:15
203:6 204:10
**today's** 10:9 134:15
**toes** 36:2
**told** 27:12 44:8 57:8
57:20 58:5 59:22
60:9,24 62:2 63:7,21
66:19 82:17 90:13
92:11,14 122:3 134:7



135:18 136:8,10
137:6 138:21 141:14
179:23 191:24
211:24
Tom 69:5,6
tone 168:20,22 169:7
169:11 172:21 173:4
toned 169:4
toning 166:13
tools 166:5
top 7:2,8,14,20 8:2,21
9:2,8 39:6,10 113:7
123:11 129:18 133:8
145:17 147:23
150:17
topics 59:21
total 38:18 86:6 191:7
totally 109:3
Touche 16:8,11
to-date 135:2
trace 127:24
Traceability 134:22
tracing 92:15
tracking 39:12,15,16
trade 43:1 65:1,4
73:18 130:4 133:6
139:10 143:5
traded 73:15,15 128:9
traders 160:10
trades 24:3 39:6,10
42:20,22 43:3 64:10
71:14 73:15,17 93:10
93:16 138:10,17
139:24 143:7,12
trading 38:16,18 42:4
42:9 43:10 45:13,14
45:15 60:18 62:7
87:25 128:5 133:4,5
134:10 142:23 143:1
144:1,1 179:12 185:9
185:13
trained 164:8
training 16:7
transactions 135:5

transcribed 219:6
transcript 218:7,9
219:7
transferred 16:20
transparency 71:13
travel 29:16
treasuries 95:21 96:15
96:17
tried 54:7 192:3
true 101:7 218:8 219:8
truthfully 13:2
try 13:18 17:22 62:16
78:15 108:1
trying 54:9 63:17 69:7
81:7,10,23,24 82:5
92:24 99:8 189:5
198:21 202:4
Tuesday 25:24,25
Tuesdays 26:2
turn 40:17
Turning 115:5
Twenty-five 131:10
twice 29:18 129:10
two 37:2 60:14 62:5
73:19 88:4 90:9
96:10 117:11 129:3
132:7,8 136:18 137:1
137:1 143:25,25
163:20 164:1,2
165:23 187:13,16,18
190:17,20 191:2,13
191:14 192:5,17
198:10 200:24
207:20
TW7 12:10
type 45:6,18 46:3
48:22 54:13 174:14
types 40:23 76:2
184:16 198:10
typically 25:24 35:9
42:21 62:11 72:14
136:3

U

UBS 17:8 36:17 40:4,6

41:19,25 43:17,21
45:7 139:5
UK 17:4 18:21 37:20
ultimately 35:5
unacceptable 140:24
unclear 106:1
underline 130:13
underlined 129:23
understand 12:24
27:8 39:7 55:9 75:17
107:1 116:16,24
140:21 144:13
154:15 155:3 160:22
192:8 206:9
understanding 19:7
22:17 23:7 26:7
30:14 35:2 44:18
46:2 49:6,10 55:21
57:25 63:2 68:3 69:1
69:10 72:7 76:1
77:15 82:25 93:20
96:16 112:21 116:4
126:21 133:20,25
138:16 147:3 162:19
183:21 189:7,21,24
190:4 194:18 201:3,7
201:10,19 204:5
205:21
understands 24:1
understood 18:11
26:24 73:11 92:8
unfortunately 203:17
unhappy 45:2 180:21
180:23
unique 27:19 57:5
80:3
United 1:1 6:20,25
10:24 75:7 112:4
218:6
universe 190:25
university 14:5,10,12
15:2,7 98:9
unmerited 19:10
unnecessary 103:24

unprofessional 80:21
unprofessionally
194:2
unrelated 193:11
unsubstantiated
110:12,13,19 113:21
untrusting 55:17
unusual 64:8 83:20
90:20 173:15,19
update 49:8
Upper 3:13
upset 64:14,18 66:7,10
66:23 67:3 108:8
138:20
use 15:16 188:4
user 142:24
usual 111:2
U.S 1:7 10:23 46:19,22
68:18 93:11,16 98:25
116:23

V

value 46:25 47:9,10
60:12
variation 28:25
variations 88:4 196:16
196:19 197:25
212:20
Varick 10:7
various 29:9 182:19
vast 71:22 72:6
verbal 12:21 172:24
verification 64:21
65:15 85:22 86:2,12
86:22 87:5,17 92:21
94:2 99:10 139:10
179:11,12 185:9
verified 138:16
verify 63:7 86:25
103:14 136:1 138:9
139:24 142:22
146:15 185:13
verifying 139:15 143:1
version 112:22 182:20
197:15 213:2

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 28

versions 182:19
versus 87:8
veto 30:16,18 31:1,11
  31:13 32:10,13,19,23
  35:3,14,17
vetoing 174:21
vice-president 21:8,11
  21:16
Victoria 4:3,7
video 4:18,19 10:3,5
  10:11,15,17,18 97:1
  97:8 145:5,10 176:13
  176:20 195:22 196:4
  207:21 208:1 215:22
  216:2,9
videoed 97:3
videotape 10:4 97:9
  196:5
videotaped 1:12 10:20
  97:10 195:24 196:6
  216:11
view 24:5 49:23 50:18
  55:16 60:14 64:13
  79:20 87:13,20 88:18
  107:18 108:6 109:12
  111:4 112:11 114:12
  114:14 115:4 120:12
  121:12,24 122:2,8,10
  129:4 137:14,22
  141:25 151:10
  158:16,19 159:2
  166:19 177:23 179:2
  181:7,8 214:6,11,13
  214:16
viewed 81:5 203:1
views 49:19 50:21
  55:2 115:2 168:24
  172:11 175:25 180:7
visit 37:18 124:12
  168:4,5 178:5,23
  179:4,8 184:14
  186:24 187:1,7,13
  188:17,24,25 190:25
  191:1

visits 178:5,11
vis-a-vis 101:1
voice 31:2 163:11
volume 1:15 10:4 97:3
  97:9 195:24 196:5
  216:11
vote 35:1,24
voted 34:16,22

—— W ——

W 5:1
waited 22:25
Wales 14:19
walk 60:14 61:8 62:12
walk-through 60:17
  61:5,7 63:4,5,11 64:4
  65:11,25 130:11
want 13:24 14:14
  31:16 33:12 50:17
  52:11 55:22 74:10
  76:6 90:11 94:7
  105:10 108:3,8 111:8
  117:12 121:6 129:16
  142:8 160:23 163:22
  173:6 184:20 188:12
  203:1 214:8
wanted 27:22 42:1,2,3
  43:16 52:4,6,22
  54:13 59:16 66:22
  80:18,19,20 81:3
  84:11 85:20 87:5
  90:16,25 91:24 95:21
  116:24 117:14
  119:14 127:21,24
  128:1,5 131:5 151:14
  158:10,23 161:23
  164:10 181:2 185:6
  185:15 186:13 192:7
  192:8,9,11 207:16
wasn't 21:9 23:16 27:3
  27:11 45:3 50:1
  59:15 60:24 87:9
  103:17,18 106:8
  107:5 108:23 109:18
  109:19 119:12 128:6

135:19 136:9 137:12
137:18,20 147:6
158:24 159:7 163:2
179:23 188:7 203:9
wasted 117:18
way 21:12 32:11 35:21
  38:15 44:7 52:13
  56:12 60:19 63:7
  64:8,16,20 73:13,22
  74:7,18,22 75:1
  78:15 80:10 81:8
  82:7 86:4 89:10
  90:21 96:9 108:25
  110:15 115:4 119:14
  125:13 127:22 136:2
  139:25 143:9,23
  144:19 167:16
  171:21 179:24
  180:21,23 185:5
  187:24 195:7 200:5
  204:9 219:17
ways 74:9 108:4
  167:14 169:11
WC1R 2:19
WC2A 2:24
weak 182:6,8
wealth 34:5
Wednesday 25:25
week 193:18
weekly 71:14
well-run 109:13
went 19:19 20:19
  37:24 38:7 73:20,21
  73:21 90:15 173:8
  174:10 188:15 201:6
  214:7
weren't 36:2 38:3 39:6
  87:12 92:23 94:16
  116:21 138:21
  152:17 153:12
  155:16 156:3 161:18
  161:21,21 162:13
  175:23,24
we'll 140:8 141:5,6,6

215:21
we're 21:2 63:16,16
  136:13 140:20 141:3
  143:7
we've 77:7 90:19
  119:20 120:1,1
  139:17 173:18 179:5
  179:10 187:10
  189:11 195:18
whilst 80:12
White 1:25 11:2 219:3
  219:22
wider 174:15
wife 144:2
Wighton 12:10
Williams 3:3,8 11:18
willing 28:9
windows 117:11
wish 73:12 180:16
  181:18
wished 20:9 23:17
  25:20,22 27:25
  174:21 201:15
witness 4:1 5:2 12:8
  13:12,22 14:1,4
  22:24 23:3 25:20
  36:11,14 41:17 44:23
  45:1 46:7,9,19 55:7
  56:1 58:4 60:3 66:3
  66:6 67:18,21 68:7
  69:24 70:19 71:15,21
  72:11 73:11 75:12
  76:5,14,21 77:13,20
  78:10 93:9,14 95:7
  98:6,20,22 99:22
  100:12,16,23 102:19
  113:6,10,15,25 116:1
  118:8,15 120:24
  121:9 122:2,21,24
  123:2,6 132:20
  134:19 137:11 144:8
  147:11 151:24
  154:10 161:1,4
  165:14 171:7 173:1

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

175:16,19 181:20
186:20 187:9 189:18
193:17 194:5,8,10,12
194:14 197:11,13
198:4 203:22 204:19
210:1 216:8 219:9
won 192:1
Wonderful 80:14
word 128:25 129:5,6
188:5
words 59:24 150:7
153:25 154:5
work 15:18 17:3 71:2
99:1 116:5 119:6,13
133:19 148:19
150:24 156:21
158:10 162:2,11
163:6,10 164:11
166:21 183:13 186:9
196:24 198:16
208:25 210:8 214:22
worked 17:24 35:21
164:16 187:24
working 18:8 21:5
28:5 84:15 166:22
works 201:4,5
world 36:23 44:12
55:11
world-class 108:16
158:11
worried 66:7 67:2,5
82:11 108:22 111:10
161:22
worry 111:5 119:22
141:5 191:25
worth 78:22 92:25
142:1
wouldn't 31:10,17
35:7 48:14 94:15,17
197:15
write 91:11 106:22
148:22
writing 107:19
written 211:15,20

wrong 53:3 143:23
wrote 91:14 140:23
Wye 14:13

X
X 5:1 40:19 61:10
129:19

Y
Y 40:19 61:10
yeah 75:16 107:11
113:12 140:6,6,6
165:6 172:17
year 15:4 21:15,15
167:1 212:23
years 16:7 17:7,25
67:19,20 88:15
103:20 109:2 146:6
Yep 12:25 71:8 93:22
105:6 115:9 189:16
192:7
York 1:1 2:6,10 10:7,7
10:8,25 37:17 68:24
69:2,3 218:6

Z
Z 40:19 61:10
Zihnali 69:5

$
$100 78:16,17,22
$2,000 114:22
$500 114:21

0
0)20.3330.0900 2:20
0)20.7006.1373 3:14
0)20.7184.7436 4:8
0)20.7184.7533 4:4
0)20.7400.2381 2:24
0)20.7842.5555 4:14

1
1 6:2 10:4 47:13,15
67:8 68:14 97:2

131:11 165:12 183:5
1ER 1:21
1:13 145:7
1:49 145:9
10 3:13 7:11 8:1
176:22,24
10th 147:25
10-CV-4095 1:7 10:25
10.29 10:18
10:29 1:17 10:2
100 128:9 133:7 208:8
10005 2:6,10
10014 10:8
101 1:20 6:11
11 7:17 8:7 150:18
182:12,14
11/5/03 8:18
1111 3:4,8
112 6:16
12 5:3,4 8:11 9:5
185:21,23
12th 208:20
12.05 97:2
12.20 97:11
12:05 97:5
12:20 97:7
123 6:21
13 8:15 67:18 196:9,11
13:12 145:6
13:49 145:11
133 6:18,23 123:13
129:19,21 131:8
14 6:18 8:20 198:24
199:1
14:23 176:14
14:24 176:21
14:43 195:23
14:50 196:3,7
140 2:6,10
145 7:1
147 7:7
15 9:1 208:3,6
15:02 207:22
15:12 208:2

15:18 215:23
15:19 216:3
15:20 216:10
150 7:13
156 7:19
16 1:16 9:7 10:9 16:7
17:7,25 209:7,9
16th 10:13,15
160 4:3,7
177:5
17th 61:16,19,25
62:25 145:18
176 8:1
1804843 182:12
182 8:7
185 8:11
19 9:11 209:13
196 8:15
1980s 18:3
1982 15:5
1983 18:2
1984 18:4
199 8:20
1996/1997 68:5
1999 18:3 19:21

2
2 1:20 6:6 97:9,13,15
104:16 134:21
195:24
2:23 176:15
2:24 176:17
2:44 196:1
20 8:5 101:18
20th 177:4
2000 18:5 19:22
2003 68:20 197:10
2005 6:4 19:23 20:18
24:11,11 26:10 27:17
40:2 48:3 49:1 153:2
2006 6:9,14 7:5,11,17
7:24 9:5,11 28:23
29:20 54:5 56:15
89:17,18 97:19
104:22 113:8,11

CONFIDENTIAL
MR. RAJIV JAITLY - 7/16/2012

Page 30

| | | |
|---|---|---|
| 124:12,14 125:3 | 33431 2:15 | 77:7 147:16,18 159:11 |
| 145:18 147:25 | 34 183:7 184:5 | 174:8 |
| 150:19 156:16 168:8 | 35 128:12 133:6,20 | 7AN 4:14 |
| 174:7 189:2 190:16 | 134:1 | 70 135:15,22 136:4,5 |
| 190:19 191:1 208:20 | 36 129:21 | 137:7,21 138:3,4 |
| 209:13 | 360 196:10 | 185:15 |
| 2007 8:5,9,24 29:21 | 3702345 196:10 | 71 176:25 |
| 90:6 136:24,25 137:3 | 3742547 198:25 | 7601 156:12 |
| 137:5 174:7 175:19 | 3742549 185:22 | |
| 177:4 199:5 | 3755329 209:8 | **8** |
| 2012 1:16 10:9,17 | 3972069 176:25 | 87:13 150:13,15 |
| 208 9:1 | | 80s 16:1,14 |
| 209 9:7 | **4** | 826891 101:17 |
| 210 5:5 | 44:13 6:16 112:2,5 | 83 15:8 |
| 212.907.0877 2:11 | 142:2,14,16 143:14 | 87 15:25 97:14 |
| 212.907.0887 2:7 | 4DZ 12:10 | 88 15:23 |
| 213095 208:7 | 4QQ 4:4,8 | 891 182:13 |
| 225 10:7 | 40 83:24 84:2 | 894 102:10 |
| 246:23 8:24 123:12 | 406681 47:14 | |
| 24th 199:5 | 442:20,24 3:14 4:4,8 | **9** |
| 257:24 131:7,9 132:24 | 4:14 | 92:19 7:19 156:9,11 |
| 25th 156:16 | 45 128:9,11 133:8,21 | 161:10 |
| 2500 3:4,9 | 134:1,12 | 920 101:18 102:10 |
| 267596 156:11 | 46-1 6:20,25 112:4 | 95 68:15 |
| 286:4 48:3 49:1 | 47 6:2 | 976:6 |
| 28th 104:21 105:1 | 490570 145:16 | 99 16:25 |
| 296:9,14 97:19 | | |
| 29th 104:23 | **5** | |
| | 56:21 12:10 83:17 | |
| **3** | 114:4,11 123:9,14 | |
| 36:11 101:15,17 138:6 | 124:19 125:8 211:2,6 | |
| 196:5 216:10 | 5JD 2:19 | |
| 3SB 2:24 | 5JJ 3:14 | |
| 3.20 216:14 | 500 2:14 128:9 | |
| 3:02 207:23 | 5550 2:14 | |
| 3:12 207:25 | 561.826.5477 2:15 | |
| 3:19 215:24 | 599 157:18,20 | |
| 3:20 216:1 | | |
| 30 62:13 80:17 215:20 | **6** | |
| 305.536.2688 3:10 | 67:1 118:7 145:12,15 | |
| 305.810.2510 3:5 | 6700 47:14 | |
| 3128584 97:13 | 672 185:22 | |
| 3130940 150:14 | 682 68:14 | |
| 3144197 147:17 | | |
| 33131 3:5,9 | **7** | |

# Exhibit E

# ()PTIMAL
### INVESTMENT SERVICES

July 2006
Jonathan Clark
+1 212 350 3500
ois@schny.com

# Madoff Securities

## S&P 100 Equity Options Arbitrage

| Lead manager: | Bernard Madoff | Firm assets: | Estimated at $15 billion |
|---|---|---|---|
| Address: | 885 Third Avenue, New York, NY 10022 | Open/closed: | Selectively open |
| Tel: | (212) 230-2424 | Headcount: | 320 |
| Fax: | (212) 838-4061 | Firm incpn: | 1960 |

| Summary | The following report collects work done over the last two years researching Madoff Securities and its counterparties on organizational aspects. Madoff Securities currently manages $2.2 billion for Optimal SUS. Madoff Securities' setup for trading client assets is different than that of a regular hedge fund and thus poses several questions which we address in this report. In the following sections we identify and review various aspects of organizational risk and propose risk monitoring steps to address them.

Summary areas of potential risk:

- Privately owned family business shrouded in secrecy
- Counterparty risk in the options trading
- No independent custody of client assets (Madoff is the custodian)
- Lack of transparency into client accounts, through either clearing or banking accounts (although this is standard brokerage firm procedure)
- No independent verification of trading activity (unlike a standard hedge fund that has a primer broker)
- Not regulated as an investment advisor
- Lack of realistically independent auditor – Friehling & Horowitz is a very small firm with Madoff as its only major client

Mitigants to the above risks:

- Fully SEC, NASD, and FSA registered, controlled, and reviewed as a broker-dealer
- Strong financial standing with over $550 million in equity supporting a $900 million balance sheet
- Trade clearing through the DTC provides third party verification at an aggregate level, though not at the segregated level nor transparent to the ultimate client (Optimal SUS)
- Independent audit firms have reviewed positively (HSBC, PWC)
- Transparency of trading activity on timely basis (T+2)
- Madoff participation and visibility in dealer and regulator activity (board memberships, committee participations)

In addition to this Investment team report, the Operational due diligence team is in the process of performing a review of Madoff Securities as part of their ongoing coverage. |
|---|---|

**INTERNAL USE ONLY**



EXHIBIT
JAiTLY
4
O7I6I2
PENGAD 800-631-6989

| | |
|---|---|

| Organization | **Organization observations:** Madoff Securities is a privately owned family business which enhances control, but on the other hand, also increases the possibility of collusion. |
| | **View:** Despite the above, we believe the organization is efficiently and professionally managed. |
| | **Risk monitoring steps:** We review the risk of irregularities under Regulation below. |
| | Madoff Securities is a leading international market maker in all of the S&P 500 stocks, over 200 NASDAQ issues, bonds, and other securities. The firm has been providing services to broker-dealers, banks, and financial institutions (with some 600 major brokerage clients currently) since 1960 and is a leader in the U.S. "third market," which trades US listed equities away from the exchange floor. The firm is led by founder Bernie Madoff and his brother Peter Madoff, who is the senior managing director and head of trading. |
| | Madoff Securities is a registered U.S. broker-dealer regulated by the SEC and the NASD. Madoff Securities International is regulated by the FSA and is a member of the London Stock Exchange and NASDAQ Europe. Madoff Securities is not registered as an investment advisor. We explain in greater detail these aspects under Regulation below. |
| | The business is divided into the broker-dealer business and the **client managed accounts**. The broker-dealer business consists of two components, **prop trading** and **market making**, which are each headed by one of Bernie's two sons, who started at the firm after college and are currently 38 and 40. Six managers report to them, each of whom has been at the firm for at least 25 years. Volumes in the broker-dealer business remain steady at 250 thousand transactions per day (according to Madoff, this information is not available from the SEC or DTC). |
| | Bernie Madoff personally maintains tight **controls** at the firm; he has told us that "it's my money" and so he checks balances on a daily basis himself. The firm's controls include formal monitoring of all communications (mail, fax, email). Outgoing email and instant messaging are not available for traders. In addition to these precautions, the firm owns a fidelity bond underwritten by Chubb which reimburses the firm in the case of internal fraud. Madoff has not made any claims against this policy and the firm has not suffered any cases of internal fraud. |
| | Other internal controls include the firm's internal audits, performed monthly by a seven person team, and the firm's high automation and inbuilt risk limits. For example, although the firm's Compliance department checks for best execution and allocation to client accounts, this is all systems driven in the first place. Computer systems run on Stratus hardware and are all internally developed as they have found other products to be unsatisfactory. In the past, they have used their systems expertise to participate on a consulting basis in the development of the Nasdaq exchange and numerous international exchanges. |
| **Internal trade processing and execution** | **Trade processing observations:** 1) Stock transactions are processed in standard manner, with the exception of time stamping, 2) As the options trading is done OTC it has counterparty risk. |

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000139

Optimal Investment Services                                                    3

---

|  | **View:** Further transparency into the stock transactions would give them more specificity and thus a better audit trail, but we understand why this is not practical and in any case a change in the format of their reporting is not an option from Madoff's perspective (we have broached the subject in the past). With regard to the options trading, considering that in a worse case scenario one is left with a basket of highly liquid stocks, we consider the level of counterparty risk taken acceptable.

**Risk monitoring steps:** 1) Continue to monitor trading activity at the individual trade level for consistency with market levels, 2) Continue to attempt to independently confirm Madoff trading activity with an options counterparty.

In trading activity for the managed accounts, positions are accumulated through multiple transactions with multiple counterparties over a period of days in order to minimize market impact. Stocks are initially bought into Madoff's prop trading account and then sold on a pro-rata basis to the various managed accounts at the average purchase price plus a four cent per share commission. This explains why there are no time stamps or counterparties listed on trade tickets. The trade tickets are received on average two days after the trade date and report an average execution price (from the multiple trades in each name) and are written manually with system generated information. We recently caught a reporting error in the trade tickets (see Appendix 1 for details), but this is a rarity which has not happened before, to our knowledge.

As is consistent with the mandated Chinese Wall between market making and client accounts, Madoff does not **internalize** trades (i.e. the market making side of Madoff never serves as the counterparty for managed account transactions). Although most trading is conducted in New York, the account is traded around the clock with some of the execution carried out through Madoff's London affiliate.

**The options trading** employed by the strategy is exposed to counterparty risk. Although Madoff buys options with exchange-traded terms (standardized strike price, maturity, etc), he trades them in the OTC market with major dealers. Bernie Madoff was chairman of the National Securities Clearing Corporation (and was closely involved in its formation in the 1970s) and therefore has a very clear understanding of counterparty risk. The fund diversifies risk with twelve trading counterparties, with whom 'performance assurance' contracts are in place. This diversification also serves the purpose of concealing positioning.

We have not yet found a source at the major dealers with whom to confirm Madoff options trading activity (neither has Fairfield). In any case, the worst case scenario for a counterparty failure would be worthlessness of the long put positions (short options exposure does not give rise to counterparty risk), making the portfolio a long-only portfolio of highly liquid stocks. |
| **Trade clearing and custody** | **Trade clearing observations:** 1) Clearing and custody of our managed account is conducted according to industry standards, 2) Independent third party verification at the sub-account, or beneficial owner, level is not possible without Madoff's involvement.

**View:** Further transparency and control of the assets has been discussed in the past, and although certainly desirable, remains a non-starter from Madoff's perspective. Our view is that since the current custody arrangement is standard industry practice for managed accounts with broker-dealers, this is acceptable. In addition to this, PWC and Fairfield's past checks provide some measure of comfort regarding this point.

**Risk monitoring steps:** Continue verifying Madoff Securities' continued participation |

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000140

Optimal Investment Services                                                                 4

with independent clearing firms and good standing with the regulatory authorities.

Madoff Securities is a full clearing firm and a member of all US clearing corporations and depositories. The firm's systems also interface fully with the systems of all major global custodians and clearing and settlement systems. The DTC is the primary clearinghouse for equities. Equities traded through the London affiliate are cleared through foreign agencies and treasury bills are cleared through the GSCC.

The Depository Trust & Clearing Corporation's (DTCC) subsidiaries provide the infrastructure for clearing, settlement, and custody of most US securities transactions. DTCC was created in 1999 when its subsidiary operating companies The Depository Trust Company (DTC) and the National Securities Clearing Corporation (NSCC) - both of which were founded in the 1970s -- were combined under a single holding structure. DTC is the world's largest securities depository and a clearinghouse for trading settlement; NSCC processes most broker-to-broker equity, corporate, and municipal bond trades in the US.

Client assets (ie shares) are held at the DTC in **segregated accounts** designated as Madoff Client Accounts in accordance with SEC Rule 15(c)(3)(3). Thus, although not specific to a particular client, they are not commingled with Madoff assets (since they are a cash, not a margin, account) and are not available to general creditors of the firm. A further point to note is that this segregation effectively eliminates the ability to use client assets to finance proprietary activities, such as market making. Likewise there is no separation by client in the brokerage firm's bank accounts.

We spoke with **DTC** account executive Chris Breen on May 8th. He confirmed that Madoff Securities is a "direct participant", ie one of the dealers or banks that uses its clearing services for trade settlement, but limited further comment given that Madoff is a client. The DTC is owned by a number of direct participants, members of several national securities clearing corporations, the NYSE, Amex, and NASD. In turn, direct participants clear securities for "indirect participants" of the DTC. Indirect participants are also dealers, banks, trust companies, and other clearing corporations, not customers (or "beneficial owners"). Chris also confirmed that the DTC does not have transparency or responsibility to the beneficial owners of the securities it clears on behalf of its direct participants. This is also the case for auditors, who make their information requests through the direct participants.

Therefore, we can summarize the clearing and custody status of our managed account as being according to industry standards, which does not allow for independent third party verification at the sub-account, or beneficial owner, level. Madoff is opposed to any alteration of the standard brokerage custodial arrangement (such as, for example, putting the assets in a client controlled account). He has stated that any other kind of arrangement would diminish his control over the stocks, which he considers essential given the options positions used. The manager requires custody of the stock in order to write options against it and not risk being unable to deliver stock into a call contract. Moreover the manager would face significant logistics issues with a separate custodian.

In our conversations with Fairfield's analyst Amit Wijaywergiya last year and June 28th we learned that Fairfield partner Jeffrey Tucker was given access by Madoff some ten years ago to compare trade tickets against Madoff's internal blotter (log of all transactions) and to confirm trade activity with the DTC. This check successfully confirmed internal consistency as well as with the DTC. It is highly unlikely that Madoff would agree to a background check as extensive as this again and Fairfield has not repeated the exercise. The fact that it has been done with one of the major Madoff

INTERNAL USE ONLY

OPTIMAL_BERLAMONT-000141

Optimal Investment Services                                                                    5

| | |
|---|---|
| | accounts at some point in the past, however, does offer some level of comfort. |
| | In addition, PWC, auditor for several of Madoff's managed account clients, has conducted spot checks to ensure that pro-rata allocations across accounts are appropriate. In turn these pro-rata allocation calculations have matched DTC records for Madoff client accounts. We have reviewed PWC notes covering other operational aspects at Madoff Securities. |
| | The above points provide a measure of independent verification of Madoff's trading activity, albeit from indirect sources to us. |
| **Regulation** | **Regulation observations:** 1) Madoff Securities has a clean regulatory record going back over 45 years except for three very minor infractions, 2) Its financial standing is strong, 3) Regulation cannot guarantee there will not be improprieties, 4) The extent and nature of publicly available reports makes their review, though necessary, unlikely to uncover irregularities. |
| | **View:** Madoff Securities suffering or committing an irregularity is possible but remote. |
| | **Risk monitoring steps:** Continue to cultivate our relationship with Bernie Madoff and others in his organization to allow us to assess any potential change in motivation that would lead to improprieties. Given the importance of this account, this should continue to be pursued by the various levels within Optimal (CIO, ICM members, analyst). |
| | Our research in the regulatory area has focused on assessing Madoff Securities' compliance with regulations and its ability to sidestep the authorities' scrutiny. Madoff Securities is regulated as a broker-dealer but not as an investment advisor, which would require additional disclosure (Form ADV and its extensions) and complexity (eg fund audits). This is intentional on Madoff's part and is an integral part of how the managed account is set up (see Appendix 2). |
| | The SEC's **Division of Market Regulation** regulates broker-dealers to ensure fair dealing and best execution, among other principles. This is done by requiring certain levels of minimum capital (the Net Capital rule), the safeguarding of customer securities (Customer Balances and Customer Protection rules), and the maintenance of accurate records (Required Books, Records, and Reports rule). In addition there are Risk Assessment requirements (see Appendix 3 for more detail on each of these). |
| | These requirements are checked by SROs ("self-regulatory organizations" such as the NASD and major exchanges) on behalf of the SEC and by the SEC itself through inspections and required member filings. The NASD conducts biannual "Trading and Market Audits", which include random spot checks of client accounts for internal reporting and consistency with clearing accounts. The SEC's audits are typically every two years. Although these audit reports are not available to us, we have been told by Bernie Madoff and his auditor that both the SEC and NASD performed audits on the firm in 2005, without any actions or qualified opinions. |
| | Broker-dealers are required to periodically update their registration status in **Form BD**, where the dealer certifies its status with regards to any affiliations and arrangements with other firms, criminal activity, regulatory actions, civil judicial actions, and solvent financial standing. The firm has never been sued nor does it have any pending litigation. |
| | We recently examined NASD BD reports for the last eight years. The 1963 and 1974 |

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000142

censures and fines in the amount of $500 and $25, respectively, are regulatory items disclosed in the forms. A more recent censure and fine ($7000) occurred in July, 2005 when the firm failed to immediately display customer limit orders on Nasdaq securities. At the beginning of 2001, the firm changed from a sole proprietorship to a limited liability company with no change in ownership (ie Bernard Madoff 100% owner). The reports also show partial registration withdrawals from the states of Nebraska, California, Texas, and Hawaii in 2001 (no reasons given).

We also examined **financial statements** from 2000 through 2005 (part III of the Focus report, or form X-17A-5). The most recent balance sheet (October 2005) shows $918 million in assets funded by $554 million in equity. There are no other particularly noteworthy items.

The above reports comprise the publicly available reports. Parts I and II of the Focus report and Risk assessment reports (form 17-H) are not made available to the public. Part I of the Focus report is monthly and deals with the financial results and condition of the broker-dealer (with line items such as Net Profit/Loss, Net Capital, and Clearing Agency Balances). Part II of the Focus report covers both operational and financial aspects in greater detail and is prepared at the same time as the firm's annual report. Some sample topics of coverage are: Segregation Requirements, Stock Breaks, and Capital Withdrawals. Part III of the Focus report, as mentioned above, are the standard annual financial statements. The Risk assessment report (form 17-H) is quarterly and details the firm's organizational chart, risk management policies, any legal proceedings, and financial statements. Sample topics of coverage are: Off-Balance Sheet Risk, Credit Risk, and Real Estate.

In summary, oversight of broker-dealers is detailed and multi-layered but works through a **self-regulating system.** The system is thorough but also seems to depend more on the penalizing of infractions than on their prevention. Greater transparency into the SEC and NASD's required reports would be helpful.

| | |
|---|---|
| **Financial reporting** | **Financial reporting observations:** 1) The external auditor cannot be considered realistically independent, 2) The PWC audit of the SUS fund does not provide independent verification of account activity, 3) No auditor's work can ensure 100% integrity of the information.

**View:** Despite Friehling & Horowitz's dependence on Madoff Securities, F&H in fact is a dedicated firm that likely conducts quality work. However, it remains vulnerable to influence by Madoff Securities. Regarding Optimal SUS's audit, we have considered the possibility of PWC conducting deeper audits, but believe that these would not in fact be that useful.

**Risk monitoring steps:** Continue to seek separate and independent sources of information on Madoff Securities' financial standing.

**Madoff Audit**
Friehling & Horowitz (F&H) of New City, NY is Madoff Securities' **external auditor.** We spoke with David Friehling on November 18th, 2005 and on July 11th at Madoff's offices as Bernie Madoff requested the meeting include him. This is a small firm of three to four professionals with two hundred clients consisting of primarily small businesses – Madoff is its only large account. Friehling mentioned Comad as being a broker-dealer client in addition to Madoff Securities; we have not been able to find information on this company. Madoff became a client 21 years ago as one of the |

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000143

Optimal Investment Services                                                                          7

---

|  | Friehling partners had worked for Bernie previously (we note that Madoff Securities dates to 1960, so there would be a prior auditor to Friehling). Friehling is a father / son - in-law partnership. |
|---|---|
|  | David describes the annual audit at Madoff as compliance focused and taking 250 hours in a year-long process. Assets, liabilities, and income are 100% verified and expenses are sampled, per US GAAP audit standards. F&H's work includes the managed accounts, but as auditors they are not aware of any distinctions between types of client accounts. The audit includes verifying balances with the DTC and other brokers and checking internal statements against customer statements. F&H has not worked with PWC on any audit work. |
|  | When we spoke in November, David seemed surprised to hear Madoff Securities described as a secretive organization – he seemed unaware of that reputation and does not encounter any hurdles in his work there. They have never issued a qualified opinion nor seen Madoff suffer any sanctions from any of the regulators, except for the three minor censures in 1963, 1974, and earlier in 2005. |
|  | We examined F&H's last five audits of Madoff as mentioned earlier. |
|  | **Optimal SUS Audit**<br>We verified in 2004 in conversations with Mark Hourigan and Ken Owens of PWC Dublin that PWC's audit for Optimal SUS relies entirely on Madoff produced documentation. PWC compares Madoff's monthly client statement with the administrator's (HSBC) statement. This means that nothing is really independently verified as both are sourced from the same place. As noted earlier, however, PWC does conduct more involved on site checks with internal audit for other Madoff clients (such as Fairfield), although these do not seem to have yielded much additional information. |
| **Appendix 1: May 2006 reporting error** | Madoff's trade tickets for the May 595 Puts traded May 17th were mistakenly stamped with trade date May 19th (settlement May 22nd). This was easy to see as the activity was faxed to me yesterday (May 18th) and the trade price of $9 does not match the most recent range of prices. A call to Madoff cleared the confusion (and the price does fit with trading activity on the 17th). Trade tickets are written manually with information generated by their systems - so it was basically a typo although the systems are correct. They have also recently changed to three day settlement for options from one day before, which led to some confusion. Frank was pleased that we saw it - says we're the only ones from seven clients he faxes to that called him on it. |
| **Appendix 2: Investment advisor triggers** | Madoff Securities avoids regulation as an investment advisor for the following reasons under the Investment Advisors Act of 1940:<br><br>Exemption under section 202(a)(11)(C):<br>1.  The Trading Authorization Directive signed by Optimal and other managed account clients strictly limits the scope of Madoff's investments. Because the agreement clearly defines specific parameters governing securities eligible for purchase/sale and the brokerage relationship is not part of a larger financial planning service, Madoff's "investment advice" is considered "solely incidental".<br>2.  The lack of a management fee for the managed accounts avoids "special compensation" for the investment advisory activities. Any compensation that is clearly defined as a charge for advice would be considered "special compensation". This excludes brokerage commissions. |

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000144

|  | Exemption under section 203(b)(3):<br>1. The firm's limiting to fifteen its advisory relationships would also exempt it from registration requirements. |
|---|---|
| **Appendix 3: SEC rules for broker-dealers** | **Examinations and Inspections (Rules 15b2-2 and 17d-1)**<br><br>Broker-dealers are subject to examination by the SEC and the SROs. The appropriate SRO generally inspects newly-registered broker-dealers for compliance with applicable financial responsibility rules within six months of registration, and for compliance with all other regulatory requirements within twelve months of registration. A broker-dealer must permit the SEC to inspect its books and records at any reasonable time.<br><br>**Net Capital Rule (Rule 15c3-1)**<br><br>The purpose of this rule is to require a broker-dealer to have at all times enough liquid assets to promptly satisfy the claims of customers if the broker-dealer goes out of business. Under this rule, broker-dealers must maintain minimum net capital levels based upon the type of securities activities they conduct and based on certain financial ratios. For example, broker-dealers that clear and carry customer accounts generally must maintain net capital equal to the greater of $250,000 or two percent of aggregate debit items. Broker-dealers that do not clear and carry customer accounts can operate with lower levels of net capital.<br><br>**Use of Customer Balances (Rule 15c3-2)**<br>Broker-dealers that use customers' free credit balances in their business must establish procedures to provide specified information to those customers, including:<br><br>• the amount due to those customers;<br><br>• the fact that such funds are not segregated and may be used by the broker-dealer in its business; and<br><br>• the fact that such funds are payable on demand of the customer.<br><br>**Customer Protection Rule (Rule 15c3-3)**<br><br>This rule protects customer funds and securities held by broker-dealers. Under the rule, a broker-dealer must have possession or control of all fully-paid or excess margin securities held for the account of customers, and determine daily that it is in compliance with this requirement. The broker-dealer must also make periodic computations to determine how much money it is holding that is either customer money or obtained from the use of customer securities. If this amount exceeds the amount that it is owed by customers or by other broker-dealers relating to customer transactions, the broker-dealer must deposit the excess into a special reserve bank account for the exclusive benefit of customers. This rule thus prevents a broker-dealer from using customer funds to finance its business.<br><br>**Required Books, Records and Reports (Rules 17a-3, 17a-4, 17a-5, 17a-11)**<br><br>Broker-dealers must make and keep current books and records detailing, among other things, securities transactions, money balances, and securities positions. They also must keep records for required periods and furnish copies of those records to the SEC on request. These records include e-mail. Broker-dealers also must file with the SEC periodic reports, including quarterly and annual financial statements. The annual statements generally must be certified by an independent public accountant. In addition, broker-dealers must notify the SEC and the appropriate SRO15 regarding net capital, recordkeeping, and other operational problems, and in some cases file reports regarding those problems, within certain time periods. This gives us and the SROs early warning |

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000145

of these problems.

**Risk Assessment Requirements (Rules 17h-1T and 17h-2T)**

Certain broker-dealers must maintain and preserve certain information regarding those affiliates, subsidiaries and holding companies whose business activities are reasonably likely to have a material impact on their own financial and operating condition (including the broker-dealer's net capital, liquidity, or ability to conduct or finance operations). Broker-dealers must also file a quarterly summary of this information. This information is designed to permit the SEC to assess the impact these entities may have on the broker-dealer.

Source: SEC (http://www.sec.gov/divisions/marketreg/bdguide.htm#V)

**INTERNAL USE ONLY**

OPTIMAL_BERLAMONT-000146

# Exhibit F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                  :

IN RE OPTIMAL U.S. LITIGATION     :   **OPINION AND ORDER**

                                  :

                                  :   **10 Civ. 4095 (SAS)**

-----------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION[1]

        This putative class action arises out of plaintiffs' investment in the

Optimal Strategic U.S. Equity Fund ("Optimal U.S." or the "Fund"), which in turn

invested one-hundred percent of its assets with Bernard L. Madoff and his firm,

Bernard L. Madoff Investment Securities LLC ("BMIS"). Plaintiffs allege that

defendants failed to conduct adequate diligence regarding Madoff, ignored "red

flags" that should have alerted them to Madoff's fraud, and made misstatements

and omissions in connection with the sale of Optimal U.S. shares, causing

plaintiffs to lose their investments and allowing defendants wrongfully to collect

management fees.[2]

---

[1]    Familiarity with prior Opinions, in particular the prior Opinion on forum non conveniens, is assumed. *See In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011) ("December 20 Opinion").

[2]    Defendants include (1) Optimal U.S.'s investment manager, Optimal Investment Management Services, S.A. ("OIS"); (2) an employee thereof, Jonathan Clark; and (3) OIS's corporate parent, Banco Santander, S.A. ("Banco Santander"). Plaintiffs include (1) Pioneer International Ltd. ("Pioneer"), an investment

-1-

On December 20, 2011, I denied defendants' initial motion for forum non conveniens. At that time, the balance of factors was extremely close, and I noted that the public interest factors did point slightly in favor of dismissal. However, I denied defendants' motion based primarily on the deference owed to plaintiffs' choice of forum, the United States' interest in enforcing violations of federal securities law, and the due diligence efforts conducted in New York. Defendants now move, for a second time, for dismissal on the grounds of forum non conveniens. Since the December 20 Opinion plaintiffs' federal securities law claims have been dismissed and the parties have undertaken extensive discovery efforts in Europe. This dispute now concerns claims, governed by foreign law under relevant choice-of-law principles, brought by foreign plaintiffs suing mostly foreign defendants based on alleged misstatements made abroad. Because the balance of factors has changed and now point strongly towards dismissal,

---

advisory firm incorporated in the British Virgin Islands; (2) the "Pioneer Plaintiffs," fifty-six non-U.S. persons and entities who invested in Optimal U.S. based on advice provided by Pioneer (whose advice was in turn based on Defendants' misrepresentations); (3) the "Santander Plaintiffs," three foreign citizens/non-U.S. residents to whom Banco Santander International ("Santander U.S.") marketed and sold Optimal U.S., and who held their Optimal U.S. investments in accounts with non-party Santander Bank & Trust, Ltd. in the Bahamas ("SBT Bahamas" or "SBT"); and (4) Silvana Worldwide Corp. ("Silvana"), a Plaintiff who invested in Optimal U.S. from a non-Santander-affiliated bank account. *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2011) ("May 2 Opinion"); Fourth Amended Complaint ("FAC") ¶ 64.

defendants' motion is now granted.

## II.    APPLICABLE LAW

### A.    Forum Non Conveniens

"[F]ederal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine . . . in 'cases where the alternative forum is abroad.'"[3]  The "decision to dismiss by reason of forum non conveniens is confided to the sound discretion of the district court."[4]  "'[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.'"[5]

The Second Circuit employs a three-part test established in the seminal case of *Iragorri v. United Technologies Corporation* in addressing

---

[3]     *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)).  *Accord Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

[4]     *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).  *Accord ICC Indus. Inc. v. Israel Disc. Bank, Ltd.*, 170 Fed. App'x 766, 767 (2d Cir. 2006) ("'Where the district court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'") (quoting *Carey v. Bayerische Hypo-Und Vereinsbank*, 370 F.3d 234, 237 (2d Cir. 2004)).

[5]     *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 699 n.13 (S.D.N.Y. 2003) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956)), *aff'd*, 98 Fed. App'x 47 (2d Cir. 2004).

-3-

motions to dismiss under the doctrine of forum non conveniens.[6]  "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum."[7]

"[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand."[8] However, "the degree of deference given to a plaintiff's forum choice varies with the circumstances" and "the choice of a United States forum by a foreign plaintiff is entitled to less deference."[9]  In assessing the proper measure of deference,

> [f]actors disfavoring forum non conveniens dismissal "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons

---

[6]     *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-75 (2d Cir. 2001) (en banc).

[7]     *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  *Accord Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

[8]     *Iragorri*, 274 F.3d at 71.  *Accord Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 Civ. 5550, 2011 WL 2183171, at *5 (S.D.N.Y. June 3, 2011).

[9]     *Iragorri*, 274 F.3d at 71.  *Accord Thai-Lao Lignite (Thailand) Co. v. Government of the Lao People's Democratic Republic*, No. 10 Civ. 5256, 2011 WL 3516154, at *9 (S.D.N.Y. Aug. 3, 2011).

relating to convenience or expense." In contrast, Plaintiffs' choice of forum deserves *minimal deference* where that choice was motivated by "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum."[10]

Thus, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be . . . to gain dismissal" whereas "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands."[11]

At step two, "the court must consider whether an adequate alternative forum exists."[12] "The defendant bears the burden of establishing that a presently available and adequate alternative forum exists."[13]

---

[10]    *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724-25 (S.D.N.Y. 2011) (quoting *Iragorri*, 274 F.3d at 72) (emphasis added).

[11]    *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010) (quotation marks omitted). *Accord Huang v. Advanced Battery Tech., Inc.*, No. 09 Civ. 8297, 2010 WL 2143669, at *3 (S.D.N.Y. May 26, 2010).

[12]    *Iragorri*, 274 F.3d at 73.

[13]    *Abdullahi*, 562 F.3d at 189.

> Dismissal is not appropriate if an adequate and presently available alternative forum does not exist. . . . [A] forum may . . . be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all.[14]

However, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."[15] "An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement, and only on rare occasions will the alternative forum . . . be so unsatisfactory that the forum is inadequate."[16] Moreover, "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies."[17]

"At step three, Defendants must establish that a balancing of the

---

[14]   *Id.*

[15]   *Pollux Holding*, 329 F.3d at 75.  *Accord Turedi v. Coca-Cola Co.*, 343 Fed. App'x 623, 625 (2d Cir. 2009); *Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 384 (S.D.N.Y. 2009) ("[T]he standard imposed on a defendant to establish such adequacy is not heavy.").

[16]   *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 Fed. App'x 87, 91 (2d Cir. 2008) (quotation marks omitted).

[17]   *Norex Petroleum*, 416 F.3d at 158 (quotation marks omitted).  *Accord PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

-6-

private and public interest factors tilts heavily in favor of the alternative forum."[18]
In weighing the private and public interests, the Second Circuit employs a list of
factors first stated in *Gulf Oil Corp. v. Gilbert*.[19]  "The private interest factors
include: (1) the relative ease of access to evidence; (2) the cost to transport
witnesses to trial; (3) the availability of compulsory process for unwilling
witnesses; and (4) other factors that make the trial more expeditious or less
expensive."[20]  "In considering these factors, the court is necessarily engaged in a
comparison between the hardships defendant would suffer through the retention of
jurisdiction and the hardships the plaintiff would suffer as the result of dismissal
and the obligation to bring suit in another country."[21]  However, "the
concentration of evidence [overseas] weighs heavily in favor of dismissal."[22]
Moreover, American courts may not be able to "compel unwilling third-party

---

[18]     *Erausquin*, 806 F. Supp. 2d at 726.

[19]     *See Iragorri*, 274 F.3d at 73-74 (citing *Gulf Oil Corp. v. Gilbert*, 330
U.S. 501 (1947), *superseded by statute as stated by Gazis v. John S. Latsis (USA)
Inc.*, 729 F. Supp. 979, 987 (S.D.N.Y. 1990)).

[20]     *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 453-54 (S.D.N.Y.
2008).

[21]     *Iragorri*, 274 F.3d at 74.

[22]     *Palacios*, 757 F. Supp. 2d at 361.

witnesses to appear in the United States."[23]

"The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community."[24]  No one factor is dispositive, however, and so, for example, although "this country's interest in having United States courts enforce United States securities laws" is relevant "this interest is not outcome-determinative."[25]  In sum, "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[26]

### B. Choice of Law

To resolve choice-of-law conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that "'relate to the purpose of the particular law in

---

[23]     *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).

[24]     *Maersk*, 554 F. Supp. 2d at 453-54.

[25]     *DiRienzo*, 294 F.3d at 28.  *Accord Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) ("United States courts have an interest in enforcing United States securities laws, [but] this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens.").

[26]     *Iragorri*, 274 F.3d at 74-75.

conflict.'"[27]

> Under the interest-analysis test, torts are divided into two types,
> those involving the appropriate standards of conduct, rules of
> the road, for example and those that relate to allocating losses
> that result from admittedly tortious conduct . . . such as those
> limiting damages in wrongful death actions, vicarious liability
> rules, or immunities from suit.[28]

"Conduct-regulating rules have the prophylactic effect of governing

conduct to prevent injuries from occurring."[29]  When such rules are at issue, the

law of the place of the tort — commonly known as *lex loci delicti* — "will

generally apply because that jurisdiction has the greatest interest in regulating

behavior within its borders."[30]   In the end, "[i]f the choice of law analysis leads to

the application of foreign law, a court may refuse to apply that law only if its

application would be violative of fundamental notions of justice or prevailing

---

[27]     *GlobalNet Financial.com v. Frank Crystal & Co.*, 449 F.3d 377, 384
(2d Cir. 2006) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197
(1985)).  *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414
F.3d 325, 337 (2d Cir. 2005) (citation omitted) (explaining that the interest analysis
is a "flexible approach intended to give controlling effect to the law of the
jurisdiction which, because of its relationship or contact with the occurrence or the
parties, has the greatest concern with the specific issue raised in the litigation").

[28]     *GlobalNet Financial.com*, 449 F.3d at 384 (quotation marks and
citations omitted).

[29]     *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994).

[30]     *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).

concepts of good morals."[31]

## III.   DISCUSSION

### A.   Deference Accorded to Plaintiffs' Choice of Forum

Generally, a foreign plaintiff's choice of forum is accorded less

deference, unless the choice of forum is based on "valid reasons, such as

convenience."[32]  In the December 20 Opinion on forum non conveniens, I held that

plaintiffs' choice of forum was accorded deference.[33]  In doing so, I distinguished

four opinions holding that plaintiffs' choice of forum was not accorded significant

deference in similar cases involving foreign investors in foreign funds that

allegedly suffered losses due to the Madoff Ponzi scheme.[34]  In reevaluating the

*Iragorri* factors, I now conclude that plaintiffs' choice of forum is "entitled to

---

[31]     *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996)).

[32]     *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 177 (S.D.N.Y. 2006).

[33]     *See Optimal*, 837 F. Supp. 2d at 253-56.

[34]     *See In re Herald, Primeo, & Thema Sec. Litig.*, No. 09 Civ. 289, 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011); *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712 (S.D.N.Y. 2011); *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 375-78 (S.D.N.Y. 2010) ; *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1336 (S.D. Fla. 2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, No. 10-14012, 2011 WL 3823284 (11th Cir. Aug. 30, 2011) (per curiam).

some, but little, deference."[35]

   *First*, the "convenience of the plaintiff's residence in relation to the chosen forum,"[36] was not a significant factor in my prior analysis.  As I previously noted, "plaintiffs reside all over the world" and "[t]here simply is no forum that is convenient in relation to *all* plaintiffs' residences."[37]  Accordingly, "[w]hile [this factor] do[es] not suggest that New York is preferable to Switzerland . . ., [it] do[es] not raise any inference that plaintiffs' choice of New York was motivated by forum shopping considerations."[38]

   *Second*, "the availability of witnesses or evidence to the forum district"[39] now weighs against according significant deference to plaintiffs' choice of forum.  I previously noted that there was a significant amount of evidence in New York as well as in Europe, and held that this factor did not weigh heavily in either direction.[40]  However, as discovery in this case has progressed, it has become clear that the focus of discovery is in Europe, which weighs against according

---

[35] *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336.

[36] *Iragorri*, 274 F.3d at 72.

[37] *Optimal*, 837 F. Supp. 2d at 253 (emphasis in original).

[38] *Id.* at 254.

[39] *Iragorri*, 274 F.3d at 72.

[40] *See Optimal*, 837 F. Supp. 2d at 254.

-11-

plaintiffs' choice of forum deference.  As of July 16, plaintiffs had noticed or taken two depositions in New York, while fourteen deposition had been noticed or taken in Europe.[41]  Moreover, plaintiffs have resisted sitting for depositions in New York arguing that it would "requir[e] disruptive and expensive international travel for each Plaintiff."[42]  Finally, the document discovery has been focused abroad – fourteen letters rogatory have been issued seeking discovery in the United Kingdom, Ireland, Spain, Switzerland, Netherlands, and Israel.[43]  Plaintiffs have submitted declarations detailing the scope of relevant evidence located in the United States.[44]  However, these declarations mainly detail the documentary evidence relating to diligence efforts in the United States, which does not change my analysis that the significance of the United States evidence is outweighed by that located in Europe.

Although plaintiffs suggest that there is a possibility of deposing several additional U.S. residents,[45] the focus of their discovery has been in Europe.

---

[41]     *See* 7/16/12 letter from Paulo R. Lima, defendants' counsel, to the Court.

[42]     7/13/12 letter from Javier Bleichmar, plaintiffs' counsel, to the Court.

[43]     *See* 7/16/12 letter at 3.

[44]     *See* 8/6/12 and 8/8/12 Declarations of Javier Bleichmar, plaintiffs' counsel.

[45]     *See* 8/6/12 Declaration of Javier Bleichmar, plaintiffs' counsel, ¶ 6.

As discussed below, several key witnesses are former employees of OIS and not subject to compulsory service to attend a trial in New York. Accordingly, while in my prior opinion I noted that letters rogatory are an appropriate mechanism for securing testimony and that technological advances make international document production less burdensome,[46] it is now clear that the location abroad of the vast bulk of the evidence weighs against according significant deference to plaintiffs' choice of forum.

*Third*, "the defendant's amenability to suit in the forum district,"[47] as discussed previously, still weighs in favor of according some deference to plaintiffs' choice of forum despite defendants' consent to jurisdiction in Switzerland.[48] However, I do not weigh this factor heavily because no plaintiff is a U.S. citizen and only one defendant is a U.S. citizen.

*Fourth*, I previously found that there was no indication that plaintiffs' choice of forum was motivated by improper tactical considerations.[49] Given that the focus of discovery has not been the United States, I am less inclined to infer

---

[46]     *See Optimal*, 837 F. Supp. 2d at 254.

[47]     *Iragorri*, 274 F.3d at 72.

[48]     *See Optimal*, 837 F. Supp. 2d at 254-55.

[49]     *See id.* at 255.

that plaintiffs' choice of forum was motivated by genuine convenience rather than tactical considerations. Indeed, in a prior action based on similar facts brought by many of the same plaintiffs' counsel, the court noted that plaintiffs "acknowledge[d] that their decision to sue in the United States [was], to a considerable extent, based on the availability of advantageous procedural mechanisms such as the class action and contingency fee arrangements."[50] Accordingly, I find that this factor does not favor deference to plaintiffs' choice of forum.

*Fifth*, I previously concluded that there was no indication that defendants were forum shopping.[51] Plaintiffs now argue that the fact that defendants' Swiss employees requested to be deposed in Spain indicates that defendants are forum shopping. However, because defendants have corporate headquarters in both Spain and Switzerland, I cannot conclude that their choice of one forum for a handful of depositions and the other for the proposed venue of this lawsuit represents improper forum shopping.

In reweighing the *Iragorri* factors, the locus of discovery counsels that the deference accorded to plaintiffs' choice of forum should be limited. I had

---

[50]     *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336.

[51]     *See Optimal*, 837 F. Supp. 2d at 255.

-14-

previously distinguished the *Banco Santander* decision, based on a similar case, noting that "plaintiffs here argue that their choice of forum was based on the evidence available in New York."[52] Given that I now find that plaintiffs' argument has less force, I agree with that court's conclusion that plaintiffs' choice of forum is "entitled to some, but little, deference."[53]

## B. Adequacy of Switzerland as an Alternative Forum

I previously held that Switzerland was an adequate alternative forum for this action.[54] Defendants have consented to waive any defenses in a Swiss court arising out of lack of jurisdiction or any applicable statute of limitations, and dismissal is contingent on such a waiver. Plaintiffs have not raised any argument that changes my prior decision that Switzerland provides an adequate forum.[55]

---

[52] *See id.* at 256.

[53] *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336.

[54] *See Optimal*, 837 F. Supp. 2d at 256-57.

[55] I briefly note that the unavailability of the class action mechanism in Switzerland does not render it an inadequate forum. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir. 2002) (holding that joinder, where there is no class action mechanism, "is not so burdensome as to deprive the plaintiffs of an effective alternative forum"). While the lack of a class action mechanism may be relevant to the convenience analysis in the private interest factors, this carries little weight when there are no U.S. plaintiffs and the other factors weigh strongly in favor of dismissal. *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 488 (S.D.N.Y. 2006).

## C.   Private and Public Interest Factors

### 1.   Private Interests

*First*, I previously held that the "relative ease of access to evidence"[56] did not weigh significantly in either direction.[57]   I noted that certain factors considered by the *Erausquin* and *Banco Santander* courts weighed against the United States as a forum:  all plaintiffs are foreign; and "[o]f the 121 defendants and third-parties plaintiffs believed likely to have discoverable information, thirty-five have Swiss addresses and twenty-three have addresses in other European countries, mainly Ireland.  Only a handful are in New York."[58]

On the other hand, I noted that evidence concerning due diligence efforts was focused in New York.  It is now clear, however, that the focus of discovery is in Europe.  As will be discussed below under the third factor, a number of key witnesses are former employees of defendants and no longer subject to compulsory process to attend a trial in New York.  Thus, the "relative ease of

---

[56]      *Maersk*, 554 F. Supp. 2d at 453-54.

[57]      *See Optimal*, 837 F. Supp. 2d at 257-58.

[58]      *Id.* at 257-58.

access to evidence"[59] weighs in favor of Switzerland over New York.[60]

       *Second*, I previously held that the "cost to transport witnesses to trial"[61] is not a significant factor in the forum non conveniens analysis in this instance.[62]  Nothing in defendants' renewed motion changes that conclusion.

       *Third*, I previously held that the "availability of compulsory process for unwilling witnesses"[63] did not weigh heavily in either direction.[64] In doing so, I again relied on the importance of the witnesses located in the United States and the presence of the due diligence team in New York and New Jersey and considered

---

[59]    *Maersk*, 554 F. Supp. 2d at 453-54.

[60]    On August 9, 2012, plaintiffs' counsel sent a letter to the Court attaching the August 6, 2012 Memorandum Decision and Order in *Viking Global Equities LP v. Porsche Automobil Holding SE*, Index No. 650435/11 (Sup. Ct. N.Y. Co. Aug. 6, 2012), arguing that the decision counsels in favor of weighing the New York based diligence evidence heavily and discounting the burden of applying foreign law.  However, that case is easily distinguishable because (1) the court "afforded great weight" to plaintiffs' choice of forum; (2) the plaintiffs' "principal places of business [were] in New York"; and (3) the alleged misrepresentations were "purportedly made directly to plaintiffs in New York."  *Id.* at 10.  For these reasons, none of which exist here, the court held that "New York clearly has a vested interest" in the action.  *Id.* at 12.

[61]    *Id.*

[62]    *See Optimal*, 837 F. Supp. 2d at 258.

[63]    *Maersk*, 554 F. Supp. 2d at 453-54.

[64]    *See Optimal*, 837 F. Supp. 2d at 259.

that testimony from other witnesses could be secured through letters rogatory.[65]

However, it now appears that critical testimony will come from defendants' former

employees, who cannot be compelled to appear at trial in New York. These

witnesses include perhaps the most critical witness in this case – Manuel

Echeverria, former CEO of OIS. Because of that, I now find that the "availability

of compulsory process for unwilling witnesses"[66] weighs in favor of Switzerland.

     *Fourth*, I previously found defendants' attempt to point to "other

factors that make the trial more expeditious or less expensive"[67] unavailing.[68] I

continue to find that defendants' arguments concerning foreign law are properly

considered under the public interest factors rather than the private interest factors.

     *Fifth*, plaintiffs argue that the advanced stage of this litigation

counsels against dismissal based on forum non conveniens. Although plaintiffs are

correct on this point,[69] it is not determinative in this action. Plaintiffs observe that

---

[65]     *See id.*

[66]     *Maersk*, 554 F. Supp. 2d at 453-54.

[67]     *Id.*

[68]     *See Optimal*, 837 F. Supp. 2d at 259.

[69]     *See Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 614 (3d
Cir. 1991) ("[W]henever discovery in a case has proceeded substantially so that the
parties already have invested much of the time and resources they will expend
before trial, the presumption against dismissal on the grounds of *forum non
conveniens* greatly increases.").

extensive discovery has occurred and that this Court has expended a great deal of resources on this case, and this would normally weigh against dismissal. However, much of that effort was required because of the action's minimal connection to New York. In the course of five written opinions, thirteen of plaintiffs' eighteen claims have been dismissed. In particular, the federal securities law claims survived a motion to dismiss based on a tenuous theory, only to be dismissed later when plaintiffs conceded that the transactions did not occur in the United States. Likewise, the extensive discovery that has occurred does not counsel against dismissal because defendants have consented to permit such discovery to be used in a Swiss proceeding and dismissal is conditioned on plaintiffs' ability to use discovery already obtained in this case when the case is re-filed in Switzerland.[70] While starting the proceedings anew in Switzerland will cause some procedural delay, such delay will be minimized by the extensive discovery available from this litigation, which is likely much broader discovery than a Swiss court would permit.

Although I previously found that the private interest factors "fail to weigh heavily in either direction," I now find, based on the course of discovery, that private interests in this dispute between foreign plaintiffs and mainly foreign defendants arising from statements made abroad and based on transactions not

---

[70] *See* Defendants' Reply in Support of Their Renewed Motion to Dismiss Based on *Forum non Conveniens* at 4.

governed by U.S. securities law, weigh in favor of a foreign forum; namely,
Switzerland.

### 2. Public Interests

*First*, I previously found that the fora's relative interests[71] weigh
slightly in favor of New York.[72]  In doing so, I distinguished *Banco Santander* and
*Erausquin*, which held that the United States interests had been affirmed in the
criminal prosecution of Madoff, a Securities and Exchange Commission lawsuit,
and numerous lawsuits filed by domestic plaintiffs alleging domestic causes of
action relating to the Madoff fraud.[73]  I found that New York had some interest in
this case because of an "interest in federal securities fraud claims arising from New
York based conduct."[74]  However, plaintiffs' federal securities law claims have
subsequently been dismissed.[75]  In addition, the role of the New York based
conduct is now less substantial.  While Clark made his alleged misstatements from
New York, he did so on a telephone call to Switzerland.  The other alleged

---

[71]    *See Maersk*, 554 F. Supp. 2d at 453-54.

[72]    *See Optimal*, 837 F. Supp. 2d at 259-61.

[73]    *See id.*

[74]    *Id.* at 260.

[75]    *See In re Optimal U.S. Litig.*, — F. Supp. 2d —, No. 10 Civ. 4095,
2012 WL 1988713, at *1 (S.D.N.Y. June 4, 2012).

misstatements emanated from OIS, based in Switzerland, which has a stronger interest in policing such conduct. Indeed, a Swiss prosecutor has brought a criminal action against Echeverria arising out of the same facts at issue in this litigation.[76] Given the extensive proceedings in the United States arising out of the Madoff fraud that have affirmed its interests, and Switzerland's interest in policing conduct by its corporations and officers, I find that the fora's relative interests now weigh in favor of Switzerland. As noted in the prior opinion on forum non conveniens, the other factors concerning the fora's relative interests do not weigh heavily in either direction.[77]

*Second*, I previously acknowledged that the interest in "avoiding the difficulties of applying foreign law"[78] does weigh in favor of dismissal.[79] Without conclusively making a decision on applicable law, I reasoned that it was likely that foreign law would apply because none of the plaintiffs are located in the United States.[80]

---

[76] *Procédure Pénale nᵒ P/4010/2009 Franck Berlamont c/Manuel Echeverria.*

[77] *See Optimal*, 837 F. Supp. 2d at 260-61.

[78] *Maersk*, 554 F. Supp. 2d at 453-54.

[79] *See Optimal*, 837 F. Supp. 2d at 261-62.

[80] *See id.*

-21-

Plaintiffs have made no further arguments that would indicate New York law can be applied on a classwide basis. While plaintiffs make a convincing argument that the location of the tort should not be decisive,[81] their arguments do not point in the direction of New York law. Plaintiffs rely on the due diligence efforts conducted in New York to argue that New York law applies. However, this lawsuit involves claims that are conduct-regulating rules, which serve to prevent injuries from occurring.[82] Switzerland has the strongest interest in regulating the conduct of OIS, which issued the alleged misstatements.[83] Accordingly, as I previously ruled, the difficulties of applying foreign law (to adjudicate claims between foreign plaintiffs and mostly foreign defendants) weigh in favor of dismissal. While I previously found that the public interest factors weighed slightly in favor of a foreign forum, now that the federal claims are no longer present and exclusively foreign law will govern, I find that the public interest factors weigh heavily in favor of Switzerland.

---

[81]    *See LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 465-66 (S.D.N.Y. 2007) (reasoning that situations where misconduct in one jurisdiction causes injury in another country present a scenario where the locus of the tort might not align with the jurisdiction with the greatest interest).

[82]    *See Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994).

[83]    Although Clark did issue misstatements from New York, these misstatements were made in a telephone call to Switzerland.

### D.    Waiver

Plaintiffs argue that defendants' waived their right to raise a forum non conveniens defense.[84]  This argument is misplaced.  Plaintiffs' argument is based on a New York forum selection clause in an agreement between Santander Central Hispano Investment Securities ("SCHIS") and OIS.  SCHIS was the predecessor to the New York-based Santander subsidiary that employed Clark and the New York analysts who conducted the Madoff diligence.  In connection with those services, OIS submitted to jurisdiction in New York.  However, this language does not require OIS to submit to jurisdiction in New York for claims arising from investments in Madoff's funds, by investors who were not signatories to the agreement between OIS and SCHIS.  Nor is there any indication from the agreement that Optimal U.S. investors were intended third-party beneficiaries.  At most, this agreement shows that OIS agreed to litigate disputes, between the Santander subsidiaries concerning diligence efforts, in New York.  It does not demonstrate any waiver of defendants' right to raise a forum non conveniens defense in a dispute with Optimal U.S. investors.  Nor does it bear on whether New York is the most convenient forum in which to litigate *this* dispute.

## IV.   CONCLUSION

---

[84]      *See* 7/26/12 letter from Javier Bleichmar, plaintiffs' counsel, to the Court.

-23-

For the foregoing reasons, defendants' renewed motion for dismissal on grounds of forum non conveniens is granted. Plaintiffs' motion for class certification and appointment of class representatives and class counsel is denied as moot. The Clerk of the Court is directed to close these motions [Docket No. 105][85] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 10, 2012

---

[85] Defendants' renewed motion for dismissal based on forum non conveniens was raised in defendants' 7/16/12 letter to the Court requesting a pre-motion conference, which I instructed the parties I would treat as a motion, but was not docketed as a motion.

-24-

**- Appearances -**

**For Plaintiffs:**

Edward W. Miller, Esq.
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
(516) 280-7377

Alan Ian Ellman, Esq.
Javier Bleichmar, Esq.
Labaton Sucharow, LLP
140 Broadway
New York, New York 10005
(212) 907-0877

Jack Reise, Esq.
Michael L. Greenwald, Esq.
Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809
(561) 750-3000

**For Defendants:**

Gustavo J. Membiela, Esq.
Samuel A. Danon, Esq.
Hunton & Williams, LLP
1111 Brickell Avenue
Miami, Florida 33131
(305) 810-2500

Paulo Roberto Lima, Esq.
Shawn Patrick Regan, Esq.
Hunton & Williams, LLP (NYC)
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1395