UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re Application of FRANCK BERLAMONT for
an Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings.

15 MISC. 0058

---

## HUNTON & WILLIAMS LLP'S OPPOSITION
## TO  PETITIONER'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
## <u>TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>

**HUNTON & WILLIAMS LLP**
Shawn Patrick Regan, Esq.
200 Park Avenue, 52nd Floor
New York, New York  10166
Telephone:  (212) 309-1000
Facsimile: (212) 309-1100
Email:  sregan@hunton.com

- and -

Thomas R. Julin, Esq. (to be admitted *pro hac vice)*
Paulo R. Lima, Esq.
1111 Brickell Avenue, Suite 2500
Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  tjulin@hunton.com
Email:  plima@hunton.com

*Counsel for Hunton & Williams LLP*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

RELEVANT BACKGROUND ..............................................................................................1

Argument ..............................................................................................................................4

I.      BERLAMONT CANNOT SATISFY THE STATUTORY REQUIREMENTS OF
        SECTION 1782 BECAUSE HE DOES NOT SEEK TO USE THE MATERIALS
        "IN A PROCEEDING IN A FOREIGN OR INTERNATIONAL TRIBUNAL.................4

        A.      *Intel* and the "Tribunal" Requirement.................................................................4

        B.      Berlamont Cannot Show That the Swiss Public Prosecutor is Acting as a
                "Tribunal" in This Case. ........................................................................................7

CONCLUSION.......................................................................................................................10

i

Respondent, Hunton & Williams LLP ("Hunton"), respectfully submits this Opposition to Petitioner's Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings.

## PRELIMINARY STATEMENT

Petitioner Franck Berlamont ("Berlamont") relies on the Second Circuit's ruling in *In re Application for an Order Pursuant to 28 U.S.C. § 1782*, 773 F.3d 456 (2d Cir. 2014) ("*Optimal v. Berlamont*") for the proposition that the public prosecutor he seeks to assist qualifies as a "tribunal" as that term is used in the statute and the relevant case law. But, in contrast to the "sparse" record before the Second Circuit in *Optimal v. Berlamont, id.* at 457 n.3, the factual evidence submitted herewith — including testimony by two Swiss law experts, one of them a former magistrate himself — shows that the Swiss public prosecutor here is not an investigating magistrate and does not qualify as a "tribunal" under section 1782. As such, this case is distinct from *Optimal v. Berlamont.*

This Court can and should determine in the first instance whether Berlamont can support his contention that the public prosecutor he seeks to assist qualifies as a "tribunal" as required to bring Berlamont's application within the bounds of Section 1782. For the reasons set forth below, and as demonstrated by the expert declarations submitted herewith, Berlamont cannot, as a matter of fact here, meet the statutory criteria of Section 1782 and the application should be denied.

## RELEVANT BACKGROUND

In *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court held that, in order to qualify as a "tribunal," the relevant entity to which a litigant seeks to provide discovery must have adjudicative power. Relying on that authority, Hunton — and its co-respondent Optimal Investment Services S.A. ("OIS" and, together with Hunton, "Optimal") —

1

argued in *Optimal v. Berlamont* that Berlamont had failed to carry his burden before the District Court because he had introduced no evidence showing that the officer to whom he sought to provide the requested documents, Geneva Public Prosecutor Marc Tappolet, possesses any adjudicative power and, therefore, had not shown that the documents were requested "for use in a proceeding in a foreign or international tribunal." (*Optimal v. Berlamont*, Dkt. # 35 at 11-14).[1]

The panel began its December 12, 2014, decision in *Optimal v. Berlamont* by noting that "the record is sparse as to the specific institutional responsibilities of the Swiss investigating official." *Id.* at 457 & n.3. In light of the thin record, the panel chose to "adopt the terminology of the District Court, which referred to [Tappolet] as an 'investigating magistrate.'" *Id.* at 457 n.3. The panel concluded that, as an "investigating magistrate," Tappolet was a "tribunal" for purposes of Section 1782 because he serves "an impartial role in the Swiss criminal justice system." *Id.* at 461 & n.8 (citing Gwladys Gilliéron, *Wrongful Convictions in Switzerland: A Problem of Summary Proceedings*, 80 U. Cin. L. Rev. 1145, 1147 (2012)). Neither Berlamont nor Optimal had cited Professor Gilliéron's article in the briefing before the district or circuit court. After the panel opinion issued, Berlamont filed two motions seeking to expedite production of the Jaitly Materials and claiming that expedited treatment was needed to ensure that he could submit those materials to Tappolet by the then-deadline of December 19, 2014.

---

[1] Berlamont sought (and ultimately obtained) the transcript of the oral examination of OIS's former Chief Risk Officer, Rajiv Jaitly, and the exhibits thereto (the "Jaitly Materials").[2] As Berlamont's application in this action concedes, this proved to be just one of a series of fugacious deadlines presented by Berlamont to urge both the District Court and the Second Circuit to expedite rulings in *Optimal v. Berlamont*. (*See* Memo of Law at 6 (noting "[t]he deadline for evidentiary submissions was subsequently extended into January 2015, and now…the Swiss investigating magistrate has again extended the deadline for evidentiary submissions")).

(*Optimal v. Berlamont*, Dkt. # 69 & 77).[2]

On December 15, 2014, Optimal moved for panel rehearing and rehearing en banc, arguing that the panel had overlooked a subsequently published treatise by the author of that same article, Gwladys Gilliéron, PUBLIC PROSECUTORS IN THE UNITED STATES AND EUROPE - A COMPARATIVE ANALYSIS WITH SPECIAL FOCUS ON SWITZERLAND, FRANCE, AND GERMANY (Springer International Publishing 2014), which shows that the panel was mistaken in concluding that Tappolet, a law enforcement officer without adjudicatory authority, is a "tribunal" for purposes of 28 U.S.C. § 1782.[3]   Faced with Berlamont's purported deadline, the panel ordered that its mandate issue on December 18, 2014, "for the limited purpose of compelling discovery" of the Jaitly Materials, but providing that Optimal's petition for rehearing or rehearing en banc "shall be decided in the normal course." (*Optimal v. Berlamont*, Dkt. # 88).

In light of Berlamont's failure to adduce any evidence or legal authority bearing on Tappolet's powers (and the related key question of whether he can be considered a "tribunal"), Optimal sought leave to submit an expert declaration by Professor Gilliéron, the author of the article on which the panel relied.[4]   The Second Circuit granted Optimal's motion but has not yet

---

[2]   As Berlamont's application in this action concedes, this proved to be just one of a series of fugacious deadlines presented by Berlamont to urge both the District Court and the Second Circuit to expedite rulings in *Optimal v. Berlamont*. (*See* Memo of Law at 6 (noting "[t]he deadline for evidentiary submissions was subsequently extended into January 2015, and now...the Swiss investigating magistrate has again extended the deadline for evidentiary submissions")).

[3]   A copy of Optimal's Petition for Rehearing and Rehearing En Banc (*Optimal v. Berlamont*, Dkt. # 81) is attached hereto as **Exhibit A** to the Declaration of Shawn Patrick Regan ("Regan Decl."), which is being submitted in support of this Opposition.

[4]   A copy of Optimal's Motion to Supplement Petition for Rehearing and Rehearing En Banc (*Optimal v. Berlamont*, Dkt. # 92) is attached as **Exhibit B** to the Regan Declaration.

3

ruled on Optimal's petition for rehearing and rehearing en banc.[5]

<u>Argument</u>

I.    **BERLAMONT CANNOT SATISFY THE STATUTORY REQUIREMENTS OF SECTION 1782 BECAUSE HE DOES NOT SEEK TO USE THE MATERIALS "IN A PROCEEDING IN A FOREIGN OR INTERNATIONAL TRIBUNAL"**

Despite the Second Circuit's obvious concerns in *Optimal v. Berlamont* about the "sparse" record regarding Tappolet's "institutional responsibilities," Berlamont makes no effort to address that deficiency in the instant application. For its part, Hunton submits with this Opposition two expert declarations demonstrating that, under the facts of this case, Tappolet cannot be treated as a "tribunal" for purposes of Section 1782.

A.    *Intel* **and the "Tribunal" Requirement**

The Supreme Court held in *Intel*, that Section 1782 may be used to assist only fellow court-like bodies with adjudicative decision-making authority, not simply entities that fulfill traditional law enforcement or prosecutorial roles. In *Intel*, Advanced Micro Devices ("AMD") had filed a complaint with the Directorate-General for Competition of the Commission of the European Communities ("European Commission") asserting that Intel had engaged in various anti-competitive practices. AMD then applied to the U.S. District Court for the Northern District of California, pursuant to Section 1782, for an order requiring Intel to produce potentially relevant documents that it had produced in a previous U.S. litigation with another competitor.

A key issue in the Supreme Court's analysis was whether AMD had sought the discovery "for use in a proceeding in a foreign or international tribunal." *Intel*, 542 U.S. at 257. In holding that the European Commission constituted a "tribunal" for purposes of Section 1782, the Court

---

[5] A copy of the Second Circuit's Order granting Optimal leave to Supplement it Petition for Rehearing and Rehearing En Banc (*Optimal v. Berlamont*, Dkt. # 102) is attached as **Exhibit C** to the Regan Declaration.

distinguished the Commission from a law enforcement agency on the ground that the

Commission possessed adjudicative powers associated with tribunals. *Id.* at 255 and n.9.

Specifically, the Court emphasized that the Commission does not merely investigate complaints,

as a law enforcement agency would, but also, much like a trial court, renders final written

decisions subject to judicial review. *Id.* at 254-55. The Court quoted with approval the Ninth

Circuit's observation that: "'[The European Commission is] a body authorized to enforce the EC

Treaty with written, binding decisions, enforceable through fines and penalties. [The

Commission's] decisions are appealable to the Court of First Instance and then to the [European]

Court of Justice.'" *Id.* at 252.

Justice Breyer's dissent and the majority's response are particularly instructive on this

issue. Justice Breyer expressed concern that the majority had read Section 1782 too broadly,

establishing a rule whereby a "foreign private citizen could ask an American court to help the

citizen obtain information, even if the foreign prosecutor were indifferent or unreceptive," and

creating the risk that mere complainants could abuse Section 1782 discovery to coerce opponents

into improper settlements. *Id.* at 267-68 (Breyer, J., dissenting). The dissent further warned that

untethering Section 1782 from the "proceeding in a ... tribunal" requirement would open

floodgates in a fashion unintended by Congress that would "also use up domestic judicial

resources and crowd our dockets." *Id.* at 268-69. Justice Ginsburg, writing for the majority,

addressed these concerns as follows:

> The dissent suggests that the Commission "more closely resembles a prosecuting
> authority, say, the Department of Justice's Antitrust Division, than an
> administrative agency that adjudicates cases, say, the Federal Trade
> Commission."...That is a questionable suggestion in view of the European
> Commission's authority to determine liability and impose penalties, dispositions
> that will remain final unless overturned by the European courts.

*Intel*, 542 U.S. at 255 n.9.  Thus, the majority opinion makes clear that *Intel* does not expand Section 1782 to cover any foreign law enforcement officer's investigation or inquiry; rather, the *sine qua non* is whether the investigating entity possesses adjudicative powers making it the equivalent of a "tribunal," as referenced in the statute.

The panel's opinion in *Optimal v. Berlamont* acknowledged this requirement, even though it reached the wrong conclusion based on the absence of an adequate record addressing Tappolet's powers in that case.  *See Optimal v. Berlamont*, 773 F.3d at 454 n.8 (noting that "the Swiss investigating magistrate or public prosecutor [Tappolet] is akin to the French *juges d'instruction*, which Judge Friendly held out as the paradigmatic example of a 'tribunal' for purposes of § 1782").  In the wake of *Intel*, the Eleventh Circuit recognized that, in construing the term "tribunal," the Supreme Court had "applied a functional analysis focusing on whether a body acts as a first instance adjudicative decision maker, permits the gathering and submission of evidence, has the authority to determine liability and impose penalties, and issues decisions subject to judicial review."  *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 n.4 (11th Cir. 2014).  Other commentators also have read *Intel* as requiring adjudicative powers to qualify as a "tribunal" under the statute.[6]

---

[6] *See* Jonathan I. Handler and Erica Tennyson, *International Discovery Requests Under 28 U.S.C. § 1782*, PRETRIAL PRAC. & DISC. LITIG. NEWSLETTER, AM. BAR. ASS'N, Vol. 16, No. 2 (Winter 2008) ("The Supreme Court held in *Intel* that the ECAD qualified as a Section 1782 tribunal (despite the fact that the ECAD did not view itself that way) because it served as a 'first-instance decisionmaker' with the authority to determine liability and impose penalties, and its dispositions remain final unless appealed to and overturned by European courts."); Cmte. on Int'l Commercial Disputes, *28 U.S.C. § 1782 as a Means of Obtaining Discovery in Aid of Int'l Commercial Arbitration – Applicability and Best Practices*, THE RECORD OF THE ASS'N OF THE BAR OF THE CITY OF NEW YORK, Vol. 63 No. 3 (Sept. 2008) at 752  ("*Intel* interpreted the term 'a proceeding in a foreign or international tribunal' to extend to a quasi-judicial agency that serves as a 'first-instance decisionmaker.'").

**B.      Berlamont Cannot Show That the Swiss Public Prosecutor is Acting as a "Tribunal" in This Case**

In *Optimal v. Berlamont*, Berlamont failed to present evidence of Swiss law and, specifically, the scope of powers and authority of the public prosecutor at issue. The Court of Appeals then undertook its own research and concluded that Tappolet as an "investigating magistrate," was a "tribunal" for purposes of Section 1782 because he serves "an impartial role in the Swiss criminal justice system." *Id.* at 461 & n.8. This Court can and should consider the evidence propounded by Hunton here, which demonstrates that Tappolet is not a "tribunal" as required under Section 1782.

While Berlamont's application is silent on this issue, Hunton submits the expert declaration of Professor Gwladys Gilliéron, who authored the law review article on which the panel relied in *Optimal v. Berlamont*, as well as a subsequent treatise that addresses in greater detail the role of public prosecutors in Switzerland.[7] Professor Gilliéron has conducted extensive research on the roles of criminal prosecutors in Europe, including comparing those roles to those of U.S. prosecutors. (Gilliéron Decl. at ¶ 5). Hunton also submits the expert declaration of Maurice Harari,[8] a Swiss attorney whose more than 40 years of practice include service as a public prosecutor in Geneva and, later, as an investigating magistrate in Geneva. (Harari Decl. at ¶¶ 4, 6). Mr. Harari also served as a trial court judge in Geneva, presiding over both criminal and civil matters. (*Id.* at ¶ 7). Additionally, Mr. Harari taught international criminal law at a Swiss law school and has published extensively in the fields of criminal procedure, criminal law,

---

[7] A copy of Professor Gilliéron's Declaration is attached as **Exhibit D** to the Regan Declaration.

[8] A copy of Mr. Harari's Declaration is attached as **Exhibit E** to the Regan Declaration.

and international mutual assistance. (*Id.* at ¶¶ 8-9). The declarations of Professor Gilliéron and Mr. Harari show that Tappolet is not acting as a "tribunal" for purposes of Section 1782.

These expert declarations demonstrate that, as of the enactment of the Swiss Code of Criminal Procedure on January 1, 2011, "the position of investigating magistrate no longer exists in Geneva or in any other canton in Switzerland." (Harari Decl. at ¶ 13; *see also* Gilliéron Decl. at ¶¶ 8-9).[9] Putting aside Tappolet's job title, Professor Gilliéron and Mr. Harari opine that Tappolet, based on the crimes that he is investigating, does not have adjudicative power, as would be required for him to be considered a tribunal under Section 1782. Berlamont asserts that Tappolet is investigating former OIS Chief Executive Manuel Echeverría for the crime of "disloyal management with the aim of self-enrichment on the basis of a legal act," (Berlamont Decl. at ¶ 4), which carries a custodial sentence of one to five years (Harari Decl. ¶ 19). In Switzerland, a public prosecutor wields adjudicative powers only in circumstances where they can impose "summary penalty orders," which are limited to crimes punishable by a custodial sentence of no more than six months. (Harari Decl. ¶ 16). Therefore, Tappolet is not authorized to impose a summary penalty order in connection with his investigation of Echeverría. (Harari Decl. ¶ 20-21; Gilliéron Decl. ¶ 13). Mr. Harari summarized Tappolet's authority in connection with the Echeverría investigation as follows:

> Mr. Tappolet does not have adjudicative authority in his investigation of Mr. Echeverría, or when investigating any major or qualified offense, for that matter. Rather, his role is simply to

---

[9] In addition to Professor Gillieron's 2012 law review article, which, as Professor Gilliéron explains in her expert declaration, the panel misunderstood, the panel also cited a 1935 law review article, Morris Ploscowe, *The Investigating Magistrate (Judge D'Instruction) in European Criminal Procedure*, 33 MICH. L. REV. 1010 (1935). *See Optimal v. Berlamont*, 773 F.3d at 457 n.3. The panel also cited *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017 (2d Cir. 1967), which also is of little value on this issue based on the recent change in Swiss law. *See id.* at 461 n.8.

8

> act as an arm of the Canton of Geneva in gathering evidence to
> determine whether there are sufficient grounds  to present the case
> to a Swiss tribunal…

(Harari Decl. at ¶ 22).  Professor Gilliéron, likewise, concluded as follows:

> When a public prosecutor is investigating….qualified offenses
> such as murder (article 112 SCC) and disloyal management with
> the aim of self-enrichment on the basis of a legal act (article 158
> para 1 SCC), the Swiss public prosecutor plays a similar role as a
> District Attorney in the United States…
>
> The Swiss public prosecutor does not have the power to adjudicate
> major crimes or qualified offenses.

(Gilliéron Decl. at ¶¶ 11, 13).

Understandably aware of these issues and unable to present any evidence that Tappolet is

a "tribunal," Berlamont proposes an overly broad reading of the statute that would compel

absurd results.  Berlamont relies on the 1996 amendment to Section 1782, which revised the

statute to allow discovery "for use in a proceeding in a foreign or international tribunal,

***including criminal investigations conducted before formal accusation***."  (Memo of Law at 8

(emphasis in original)).  Berlamont argues that the amendment, which added the emphasized

language, should be read so expansively as to do away with the "tribunal" requirement.  But the

amendment merely explains the scope of "tribunal" as it is used in the preceding clause,

clarifying that the absence of pending formal criminal charges does not *per se* disqualify an

investigation from being a "proceeding in a foreign or international tribunal."  Rather, such a

criminal investigation is capable of being a proper subject for a 1782 request, ***provided that*** the

other criteria are met — *i.e.*, that the proceeding is (i) before a tribunal, that is (ii) foreign or

international.  To read it differently would require absurd results, allowing litigants to use

Section 1782 to compel discovery for use in any "criminal investigation conducted before formal

accusation," even where that investigation is, for example, (i) conducted by a Swiss or other

foreign police officer, or (ii) conducted by a tribunal in the United States.

9

The *Intel* decision, rendered eight years after the 1996 amendment, confirms that a criminal investigation is not a "proceeding in a foreign or international tribunal" if the "tribunal" lacks adjudicative powers akin to those held by the European Commission. The exchange between the majority and dissent shows that the European Commission's criminal investigative and prosecutorial powers, standing alone, were not enough to satisfy the statute. Instead, it was the Commission's "authority to determine liability and impose penalties, dispositions that will remain final unless overturned by the European courts," that clinched the analysis. *Intel*, 542 U.S. at 255 n.9. The Court should reject Berlamont's "plain language" argument and, instead, examine the expert declarations submitted by Hunton, which confirm that Tappolet is not acting as a "tribunal" for purposes of Section 1782. As such, Berlamont has failed to satisfy the statutory requirements of Section 1782 and his application should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioner's application.

Dated:  March 17, 2015

Respectfully submitted,

    /s/  Shawn Patrick Regan
Shawn Patrick Regan, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 309-1000
Facsimile: (212) 309-1100
Email:  sregan@hunton.com

- and -

Thomas R. Julin Esq. (to be admitted *pro hac vice*)
Paulo R. Lima, Esq.
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida  33131

Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  tjulin@hunton.com
Email:  plima@hunton.com

*Counsel for Hunton & Williams LLP*

11